Mike Arias, Esq. (CSB #115385)
Mark A. Ozzello, Esq. (CSB #116595)
Mikael H. Stahle, Esq. (CSB #182599)
ARIAS OZZELLO & GIGNAC LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045-1558
Tel: (310) 670-1600
Fax: (310) 670-1231
marias@aogllp.com

Walter L. Haines, Esq. (CSB #71075)
UNITED EMPLOYEES LAW GROUP, PC
65 Pine Avenue, Suite 312
Long Beach, CA 90802
Tel: (562) 256-1047
Fax: (562) 256-1006
walter@whaines.com

Attorneys for Class Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY TRINH, an individual, on behalf of himself and all others similarly situated; ERIC STOREY, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>JPMORGAN CHASE & CO., a Delaware corporation; JPMORGAN CHASE BANK, N.A., a New York corporation; CHASE MANHATTAN MORTGAGE CORPORATION, a New Jersey corporation; DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. '07 CV-01666 W (WMC)<br><br>Hon. Thomas J. Whelan<br><br>**CLASS ACTION**<br><br>**DECLARATION OF JIMMY TRINH IN SUPPORT OF MOTION TO FACILITATE NOTICE TO POTENTIAL CLASS MEMBERS**<br><br>Date: February 19, 2008<br>Ctrm.: 7<br>    NO ORAL ARGUMENT<br>    PER LOCAL RULES<br><br>[FILED CONCURRENTLY WITH;<br>1. NOTICE OF MOTION;<br>2. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO FACILITATE NOTICE TO POTENTIAL CLASS MEMBERS;<br>3. DECLARATION OF ERIC STOREY; AND<br>4. [PROPOSED] ORDER<br><br>Complaint Filed: August 22, 2007<br>Trial Date:       None |

I, JIMMY TRINH, declare as follows:

1. I have personal knowledge of the matters stated herein, except as to those matters stated upon information and belief, and as to those matters I believe them to be true. If called as witness, I could and would testify truthfully and competently to the matters stated herein.

2. I submit this declaration in support of Plaintiffs' Motion to Facilitate Notice to Class Members in the action entitled *Jimmy Trinh v. JP Morgan Chase & Co. et al.* United States District Court, Southern District of California.

3. I was hired by JP Morgan Chase & Co. ("JP Morgan") (on information and belief, acting in concert with, and on behalf of, co-defendants JP Morgan Chase Bank, N.A., and Chase Manhattan Mortgage Corporation) on November 15, 2006, to work in the Del Mar branch of Chase (the branch is now closed). I was hired as an "account executive" and "loan officer" to solicit loans. In essence, I was selling loans to brokers, realtors, other loan officers, and the general public. I was selling these loans based off of leads provided by JP Morgan and my own referral sources.

4. Within approximately a month and half of my hiring, I was sent to the Chase branch located in Rancho Bernardo, California for training. During this training, I was part of approximately 15 to 20 employees who were being simultaneously receiving the same information as myself. These other account executive and loan officer employees were from other branches across the country and included employees from: Colorado, Arizona, Chicago, and San Francisco.

5. During this training, all employees received the same directive with respect to our job duties and functions, were collectively informed of the parameters which this job encompassed, and, the limits of our authority. At this seminar, I believe, to an "nth" degree of certainty, that each of the loan

officers were given the same training manual. In addition, during my employment, I had conversations with numerous other employees, each of whom had been hired as account executives and loan officers, and each of whom indicated to me that their "training" was identical to that which I had received in Rancho Bernardo.

6. It is my understanding that each of the account executives and loan officers would solicit and sell loans based upon the same criteria. For example, the loan applications were identical, the applications were provided by JP Morgan, we would all obtain the same information from the loan applicants, and we would all enter that information into the same on-line system. If the potential borrower fit the all of the guidelines that were set forth by JP Morgan, then we would get approval from the branch and sales managers, to "sell" the loan.

7. Based on my interaction and conversations with other account executives and loan officers, both during training and afterwards when I began selling loans, it is my understanding that all of the base salaries and commission compensation for the account executives and loan officers were essentially the same.

8. There were 12 other account executive and loan officer employees in the Del Mar office and I interacted with each of them. Based on that interaction, it is my understanding that our job functions and method of compensation was the same. I also traveled to the Rancho Bernardo, Ontario, and La Mesa branches for training. Based on my training in those offices, I can attest that all of the loan officers literally throughout the country, had the same job functions as in the Del Mar office and were compensated in the same fashion and based upon the same criteria.

9. While employed, I was required to work 10+ hours a day during the week. My branch manager informed me, and every other loan officer, that

DECLARATION OF JIMMY TRINH IN SUPPORT OF PLAINTIFFS' MOTION
TO FACILITATE NOTICE TO POTENTIAL CLASS MEMBERS

we were to work as many hours as possible, including after hours, to sell as many loans as possible. In fact, towards the end of my employment, the branch manager instituted a "mandatory" weekend lead call generation. Loan officers were required to work approximately 3 hours during the weekend making calls to potential loan applicants.

10. Based on my interaction and conversations with other account executives and loan officers, it is my understanding that none of these employees, including myself, were compensated for any of the overtime hours we worked. I know I was not.

11. Attached as Exhibit 1 to this declaration is a document entitled "Subprime Retail Minimum Monthly Production Standards", which was distributed to all new loan officer employees in: Massachusetts; Ohio, and California. This clearly evidences that all loan officer employees of Defendants had the same minimum standards for production in association with their job function.

12. Attached as Exhibit 2 to this declaration is a document entitled "JP Morgan Chase Bank N.A. Non-Prime Retail Account Executive (AE) Compensation Plan and Policy Statement", which describes the method of compensation for loan officers or account executives. This document has a footer with a document code, meaning it is a pre-fabricated document from JP Morgan which was distributed to all loan officers or account executives.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed this 15 day of January, 2008, at San Diego, California.

JIMMY TRINH

EXHIBIT "1"

## Subprime Retail Minimum Monthly Production Standards

*There is a 90-day ramp period for new hires.*

<u>Boston, Columbus, Diamond Bar, Jericho, and Woodcliff Lake</u>
- 4 units **or** $325,000
- Register a minimum of 8 new applications each month
- Maintain a monthly minimum pipeline of 6 units

*Please remember that these standards are the minimum expectations for corrective action and are separate from compensation standards*

Jimmy Tay Trinh — 45596J
Print Name          GID #

*[signature]*
Account Executive Signature

11/28/06
Date

EXHIBIT "2"

# JP Morgan Chase Bank N.A.
## Non-Prime Retail Account Executive (AE)
## Compensation Plan and Policy Statement
### Effective Date: August 1, 2006

Name: Jimmy Tay Trinh

The JP MORGAN CHASE BANK N.A. Non-Prime Retail Account Executive Compensation Plan and Policy Statement ("Plan") is to be read along with any applicable Terms of Agreement ("Terms") and both are subject to change, only in writing, at anytime and for any reason, at the discretion of the Channel Executive.

### A. Purpose
It is JP MORGAN CHASE BANK N.A.'s intent to provide a compensation plan for each designated Non-Prime Retail Account Executive which will motivate the Account Executive in generating profitable volume for the Non-Prime Channel through active account management and to reinforce JP MORGAN CHASE BANK N.A.'s commitment to sound risk management, quality customer service and the JPMorgan Chase Mission and Values.

### B. Objectives
It is the objective of this Plan to compensate individuals ("Participants") for high performance including production; to provide a total compensation package that rewards top performance as well as attracts and retains the top people in the industry; and to ensure that all Participants in the plan demonstrate the JPMorgan Chase Mission and Values.

### C. Eligibility
To be eligible to receive Compensation (as defined in Section E. below) a Participant must be an active employee of JP MORGAN CHASE BANK N.A. and designated as a Non-Prime Retail Account Executive at the time of plan payout, though a Participant may receive Compensation beyond their termination date as outlined in Section I.

### D. Plan Period
This Plan and the attached Terms will continue in effect as stated in the signed Terms unless amended or discontinued. JP MORGAN CHASE BANK N.A. reserves the right to amend or discontinue the Plan, including any payment under the Plan at any time prior to payment without notice and for any reason.

### E. Compensation
Total Compensation (as stated in your Terms) may be made up of Base Salary, Commission, and Quarterly Bonus.

#### E.1 Base Salary
As stated in the Terms of Agreement.

#### E.2 Commissions
As stated in the Terms of Agreement.

Commission amounts for those loans that are closed, funded and transmitted during the current calendar month will be paid monthly on the last payroll of the following month.

#### E.4 Underage Policy
As set forth in the Terms of Agreement. Underage on Chase mortgage products will be paid on a monthly basis on the last payroll of the following month.

> **Underage** amounts will be split with Participants as per the divisional underage policy, up to normal divisional underage rules.

Underage in excess of Commission will be treated as a Deficit. Deficits will be deducted from Compensation during the following month(s) until it is paid in full.

F. <u>Payment of Compensation</u>
Payment calculations will be completed by the Finance Department according to the terms of this Plan.

G. <u>Benefits</u>

G.1 Participant is eligible for JPMorgan Chase benefit plans as described in the JPMorgan Chase Benefits Program document. The document may contain Compensation factors that are not applicable to the Participant. Therefore, only the Compensation factors stated in section E. are relevant and will specifically apply to the Participant. The value of benefits will be based on Benefit Eligible Compensation (BEC) as stated in the annual enrollment summary packet and *AccessHR*.

G.2 Participant will be entitled to unpaid time-off or paid time-off on Base Salary, if applicable, pursuant to JPMorgan Chase policy as defined in the Human Resources Policy Guide.

H. <u>Conditions on Payment of Compensation</u>

Payment of Incentive Compensation is expressly conditioned on the following:

H.1 Participants shall devote full work time, attention and energy to their positions subject to the direction and control of the Channel Executive.

H.2 Participants who fail to comply with the polices and standards identified herein may be denied all or a portion of their Compensation and be subject to corrective action, up to and including termination. All policies referred to are incorporated into the Plan by reference. Participants shall at all times understand and comply with the JPMorgan Chase CLeaR Operating Principles and JPMorgan Chase's Code of Conduct ("Code of Conduct"), which includes the Intellectual Property Policy (the "Intellectual Property Policy"), and Human Resources Policy Guide (available on JPMorgan Chase's Intranet). Participants will further comply with the Non-Prime Retail Channel Policy and Procedure Manual, rules, regulations and ethics of the JPMorgan Chase & Co., and its investors, HUD, VA, FNMA, GNMA, and FHLMC, as well as all federal, state and local laws. All loans originated by Participant must comply with all applicable laws and regulations including, but not limited to, the Truth in Lending Act, Equal Credit Opportunity Act, Fair Lending Act, Real Estate Settlement Procedures Act and state mortgage banking laws. Participants acknowledge that they have received and reviewed the policies identified above. Participants will follow the policies and standards identified above, which includes a duty of loyalty and fiduciary duty to JPMorgan Chase Bank N.A.

H.3 Consistent with the Code of Conduct (including the Intellectual Property Policy), Participants will not misappropriate or use for the benefit of anyone other than Chase any confidential or proprietary information relating to Chase's business.

If Participant becomes legally compelled by an order of a court or governmental agency to disclose any Confidential and Proprietary Information, they shall provide JPMorgan Chase Bank N.A. with prompt prior written notice to JPMorgan Chase, N.A., Chase Home Finance, Attention: Non-Prime Retail Channel Executive, 194 Wood Avenue South, Floor 4, Iselin, NJ 08830-2710 United States so that JPMorgan Chase Bank N.A. may assert whatever interest it has in the information prior to disclosure by them. Upon termination of Participant's employment or at any time upon Chase's request, Participant will turn over to Chase all Chase property including Chase's Confidential and Proprietary Information. Further, any such information in Participant's possession or control on computers including mobile or remote computers (e.g., desktop PCs, laptop PCs and personal digital assistants), owned by Participant or used by Participant, must also be returned. Chase will assist Participant in removing such information from Participant's own computer and reserves the right to assure that such steps have been taken, including having access to such computers and/or premises.

H.4 Participants possessing a real estate salesperson or broker's license shall not, under any circumstances, actually market any real property for any real estate firm, developer, broker, home builder or land dealer or otherwise while employed by JPMorgan Chase Bank N.A. provided, however, that a Participant may sell or acquire personal real property for their individual purposes.

H.5 To be eligible for any Commission payment under this Plan the Participants must procure and actively assist with the processing of loans through closing consistent with the following:

    a. Comply with JPMorgan Chase Bank N.A.'s policy regarding collection of third party fees at the time of application (e.g. appraisal reports, credit reports or other similar fees necessary for loan processing) from all applicants or brokers, in the case of brokered out loans, unless a written fee waiver is approved the Branch Manager. Uncollected fees will be considered an advance by the Account Executive to the applicant or broker and JP MORGAN CHASE BANK N.A. will be recover the advanced amount from the loan origination fee payable to the Account Executive.

H.6 JPMorgan Chase Bank N.A. is subject to various laws, which prohibit discrimination on the basis of race, sex, and other protected classifications. These laws generally prohibit the imposition of different rates/charges to such persons and companies. Violations carry substantial penalties and can lead to actions by supervisory agencies and the Department of Justice and individual lawsuits. It is the policy of JPMorgan Chase Bank N.A. to comply fully with the letter and spirit of these requirements. JPMorgan Chase Bank N.A., therefore, requires Participants to be familiar with fair lending regulations and to deal consistently with all customers.

H.7 JPMorgan Chase Bank N.A. has established benchmark prices. At the same time, JPMorgan Chase Bank N.A. recognizes that business conditions may result in exceptions to these benchmarks. Mortgage lending is a competitive business and negotiations concerning pricing are sometime inevitable. It is critical that such exceptions not be prohibited based on race or sex of the applicant(s). JPMorgan Chase Bank N.A. actively monitors the prices paid by members of protected and non-protected classes in its Non-Prime line of business. An unexplained trend of disparate pricing may subject the Participant to corrective action sanctions, including termination.

H.8 Participants agree that failure to abide by the terms in the Plan is likely to result in damages or losses to JPMorgan Chase Bank N.A. for which any remedy at law will be insufficient. Therefore, in the event of failure to abide by the Plan or any threat of failure to abide by the Plan (including, but limited to if Participant violates the terms of Section H.2 and H.3), JPMorgan Chase Bank N.A. shall be entitled to seek temporary or preliminary injunctive relief in any court to enforce any right under the Plan. However, such actions by JPMorgan Chase Bank N.A. shall not, in any way, preclude JPMorgan Chase Bank N.A.'s right to seek monetary or other damages.

H.9 Failure to comply with any and all of the above stated items in Section H. may result in termination.

I. Employment Terms/Payment of Compensation

I.1 Participant's employment can be terminated, with or without cause, and with or without notice, at any time, at the option of JPMorgan Chase Bank N.A. or Participant. Nothing contained in this Plan is intended to create a contract of employment or alter the at-will nature of Participant's employment, and nothing contained in this Plan shall be deemed to constitute an agreement by JPMorgan Chase Bank N.A. to employ any Participant for any period of time or to pay Compensation which would otherwise have been calculated subsequent to such termination. Furthermore, nothing in this Plan shall guarantee payment of Incentive Compensation to any Participant.

I.2 Monthly Commissions and Referral Reimbursement

    I.2.1 A Participant who **voluntary terminates** or **transfers** internally from or within JPMorgan Chase Bank N.A., will be paid Commission amounts for loans for which a registered loan application has been received up to, and including, the last day worked and such loans close within 30 calendar days of the date of notice of termination or transfer from either Participant or

JPMorgan Chase Bank N.A.

I.2.2 A Participant who is **involuntarily terminated** due to a **reduction in force or job elimination** who is not otherwise employed by Chase or any associated entity associated will be paid Commission amounts for which a registered loan application has been received up to and including the last day worked and such loans close within 60 days of the last day worked.

I.2.3 A Participant who is on an approved **Leave of Absence** (including medical, disability and military leave) or **terminates as a result of death** will be paid for loans for which a registered loan application has been received up to and including the last day the Participant actively worked and such loans close within 30 calendar days of the date of the last day worked.

I.2.4 A Participant who is **involuntarily terminated for cause** will be paid trailing commissions for closed loans and closed loans registered up to and including the last day the Participant actively worked.

I.2.5. A Participant who is not active on the last day of the calendar quarter is not eligible for a quarterly referral reimbursement.

I.3 If a Participant's employment terminates as a result of his/her death before all Awards earned by him/her under the Plan have been paid, the Corporation shall pay such amounts to the Participant's estate.

I.4 Under circumstances which constitute any work related negligence, misconduct of any kind, breach of duty or loyalty or any other similar reason that constitutes a basis for discharge, Commission amounts paid will be limited to loans unrelated to such circumstances, and which close up to, and including, the last day of active employment.

J. <u>Plan Administration and Other Provisions</u>

J.1 No provision of the Plan shall be deemed to obligate JPMorgan Chase Bank N.A. to accept any loan.

J.2 As of the date of the Plan, this plan and the accompanying Terms then in effect will supercede any other prior compensation arrangements for the Participant.

J.3 This Plan may be amended by writing, only with the approval of the Channel Executive and the Human Resources Executive of Chase Home Finance.

J.4 Plan Administration - Human Resources Executive of Chase Home Finance and the Channel Executive will administer the Plan. The Plan Administrator will have the complete authority to interpret plan provisions, revise the plan and make all their determinations they deem appropriate for fair administration of the plan. Management reserves the right to amend or terminate this Plan or to revise any aspect of this Plan at any time, including individual payouts, without prior notification to the participants except that such action may not cause any Participant to be deprived of any Incentive Compensation previously earned, but not paid, in accordance with the Plan. Any Incentive Compensation shall be awarded at the sole discretion of the Plan.

J.5 Dispute Resolution

J.5.1 If a Participant believes that he / she is entitled to receive a payment under the Plan, or if the Participant believes that a payment made to him / her under the Plan has been miscalculated, the Participant shall bring the dispute to the attention of his / her immediate supervisor for resolution within 30 days following the standard payment cycle.

J.5.2 If the immediate supervisor is unable to resolve the dispute with the participant, it is the responsibility of the supervisor to describe, in writing, the details of the dispute and furnish them to the responsible HR Business Partner (policy issues) or Commission Operations (commission calculation errors) for resolution. Once the dispute has been resolved, documentation of the resolution will be forwarded to the Participant and supervisor.

J.6 Each provision of the Plan will be interpreted in such a manner as to be effective and valid under applicable law. If any provision of the Plan is held to be invalid, illegal or unenforceable in any respect under any applicable law or rule, Participant agrees that such provision will be in effect only to the extent of such prohibition or invalidity, without invalidating the remaining provisions of the Plan, and agree to be bound by a provision whose terms are as close as legally permissible to the terms of the original provision.

J.7 Participant agrees that the Plan is a term and condition of employment and agrees that he/she is bound by the Plan and the Terms then in effect.

J.8 The Plan is not an employee benefit plan subject to the requirements of the Employee Retirement Income Security Act of 1974, as amended.

J.9 Awards under the Plan may not be assigned, transferred, encumbered or otherwise made subject to a lien.

# PROOF OF E-FILING SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the State of California, County of Los Angeles. I am over the age of 18 and not a party to the within suit; my business address is 6701 Center Drive West, Suite 1400, Los Angeles, California 90045.

On **January 15, 2008**, I served a true and correct copy of the foregoing document described as: **DECLARATION OF JIMMY TRINH IN SUPPORT OF MOTION TO FACILITATE NOTICE TO POTENTIAL CLASS MEMBERS** on the interested parties in this action as follows:

Barbara J. Miller, Esq.
Darren J. Campbell, Esq.
***Morgan, Lewis & Bockius LLP***
5 Park Plaza, Suite 1750
Irvine, CA 92614
Tel: (949) 399-7000
Fax: (949) 399-7001
barbara.miller@morganlewis.com
dcampbell@morganlewis.com
*Attorneys for Defendants JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; and Chase Manhattan Mortgage Corporation*

[ ]  **BY MAIL:** I deposited the envelopes for mailing in the ordinary course of business at Los Angeles, California. I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. Under that practice, the sealed envelopes are deposited with the U.S. Postal Service that same day in the ordinary course of business with postage thereon fully prepaid at Los Angeles, California.

[ ]  **BY FAX:** I hereby certify that this document was served by facsimile delivery on the parties listed herein at their most recent fax number of record in this action on January 15, 2008, from Los Angeles, California.

[✓]  **BY E-MAIL:** I hereby certify that this document was served by e-mail delivery on the parties listed herein, via electronic transmission of the "Notice of Electronic Filing" (NEF), at the time of electronically filing the document(s).

[ ]  **BY PERSONAL SERVICE:** I delivered such envelope by hand to the offices of the addressee named herein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **January 15, 2008** at Los Angeles, California

Leandra Kamba
Type or Print Name                                Signature