1   MORGAN, LEWIS & BOCKIUS LLP
    BARBARA J. MILLER, SBN 167223
2   DARREN J. CAMPBELL, SBN 223088
    5 Park Plaza, Suite 1750
3   Irvine, California 92614
    Tele: 949-399-7000
4   Fax: 949-399-7001
    email: barbara.miller@morganlewis.com
5   email: dcampbell@morganlewis.com

6   Attorneys for Defendants
    JPMORGAN CHASE CO., JPMORGAN CHASE
7   BANK, N.A., and CHASE MANHATTAN
    MORTGAGE COMPANY

8

9                   UNITED STATES DISTRICT COURT

10              SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  JIMMY TRINH, an individual, on behalf of himself and all others similarly situated; ERIC 12  STOREY, an individual, on behalf of himself and all others similarly situated | Case No. 07 CC 01666 W |
| 13                              Plaintiffs, | Hon. Thomas J. Whalen |
| 14                         vs. | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION** |
| 15  JPMORGAN CHASE & CO., a Delaware 16  corporation; JPMORGAN CHASE BANK, N.A., a New York corporation; CHASE 17  MANHATTAN MORTGAGE COMPANY, a New Jersey corporation; DOES 1 through 10, 18  inclusive | **TO FACILITATE NOTICE TO POTENTIAL CLASS MEMBERS** |
| 19                          Defendants. | |

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES

**TABLE OF CONTENTS**

                                                                                                   Page

I.      INTRODUCTION .................................................................................................. 1

II.     LEGAL BACKGROUND ...................................................................................... 3

        A.      Administrative Exemption ......................................................................... 4

        B.      Outside Sales Exemption ........................................................................... 5

        C.      Highly Compensated Employee Exemption ............................................... 6

        D.      Combination Exemption ............................................................................. 6

III.    FACTUAL BACKGROUND ................................................................................. 7

        A.      Chase's Loan Officers................................................................................. 7

        B.      Plaintiffs Trinh And Storey ........................................................................ 8

IV.     IT IS WITHIN THIS COURT'S DISCRETION TO DETERMINE IF NOTICE IS
        APPROPRIATE. .................................................................................................... 8

        A.      The Court Has Absolute Discretion To Deny The Sending Of Notice To
                Potential Class Members............................................................................. 8

        B.      The FLSA's Collective Action Procedure Was Intended To Limit
                Employees' Ability To Proceed Collectively. ............................................ 9

V.      PLAINTIFFS HAVE NOT MET THEIR BURDEN TO DEMONSTRATE THAT
        THEY ARE SIMILARLY SITUATED TO OTHER CHASE LOAN OFFICERS. ........ 10

        A.      Plaintiffs Cannot Be Similarly Situated To Other Loan Officers Because
                Determining Plaintiffs' (And Putative Class Members') Exempt Status
                Necessarily Involves Individualized Inquiries. ......................................... 10

        B.      Plaintiffs Are Not Similarly Situated To Other Loan Officers, And Those
                Other Loan Officers Are Not Similarly Situated To Each Other......................... 13

VI.     PLAINTIFFS HAVE NOT, AND CANNOT, SHOW AN UNLAWFUL POLICY
        RELATING TO LOAN OFFICERS JUSTIFYING THEIR REQUEST FOR
        NOTICE. ............................................................................................................... 21

        A.      The Classification Of Loan Officers As Exempt Is Insufficient........................... 21

        B.      Plaintiffs' Sparse Allegations Of Localized Practices Similarly Do Not
                Constitute An Illegal Practice Sufficient To Support Their Motion .................... 23

VII.    IF ANY NOTICE WHATSOEVER IS APPROPRIATE, THE NOTICE SHOULD
        BE LIMITED IN SCOPE. ..................................................................................... 25

                1.      Notice Should Not Issue To Chase's Prime Loan Officers ..................... 26

                2.      Notice Should Not Issue Outside California. ........................................ 27

                3.      Notice Should Not Issue Outside Chase's Del Mar Office......................... 27

VIII.   IF ANY NOTICE WHATSOEVER IS APPROPRIATE, THE NOTICE SHOULD
        BE FAIR AND ACCURATE ................................................................................ 29

IX.     PLAINTIFFS ARE NOT ENTITLED TO A LIST OF PUTATIVE MEMBERS
        OF THE CALIFORNIA CLASS ACTION ............................................................ 30

X.      CONCLUSION ..................................................................................................... 32

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                               i                    DEFENDANT'S MEMORANDUM OF
                                                                 POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Alvarez v. IBP, Inc.,*
    339 F.3d 894 (9th Cir. 2003)..................................................................................... 29

*Bernard v. Household International, Inc.,*
    231 F. Supp. 2d 433 (E.D. Va. 2002)..................................................................... 9, 28

*Camper v. Home Quality Management Inc.,*
    200 F.R.D. 516 (D. Md. 2000)............................................................................... 8, 28

*Carter v. Newsday, Inc.,*
    76 F.R.D. 9 (E.D.N.Y. 1976)................................................................................... 29

*Chabrier v. Wilmington Finance, Inc.,*
    2006 U.S. Dist. LEXIS 90756 (E.D. Pa. Dec. 13, 2006) ..................................... 27, 28

*Clausman v. Nortel Networks, Inc.,*
    No. 02-0400-C-M/S, 2003 U.S. Dist. LEXIS 11501 (S.D. Ind. May 1, 2003)........... 11

*Condren v. Sovereign Chemical Co.,*
    1998 U.S. App. LEXIS 7071 (6th Cir. Apr. 3, 1998) ................................................. 6

*Crawford v. Dothan City Board of Educators,*
    214 F.R.D. 694 (M.D. Ala. 2003) ............................................................................ 31

*Dean v. Priceline.com, Inc.,*
    No. 3:00 Civ. 1273, 2001 U.S. Dist. LEXIS 24982 (D. Conn. June 5, 2001) ...... 11, 22

*Diaz v. Electronics Boutique of Am., Inc& Electronic Boutique Holding Corp.,*
    2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 13, 2005)......................................... 22

*Freeman v. Wal-Mart Stores,*
    256 F. Supp. 2d 941 (W.D. Ark. 2003)................................................................. 8, 22

*Grayson v. K Mart Corp.,*
    79 F.3d 1086 (11th Cir. 1996)................................................................................. 29

*H&R Block, Ltd. v. Housden,*
    186 F.R.D. 399 (E.D. Tex. 1999)............................................................................... 9

*Haines v. Southern Retailers, Inc.,*
    939 F. Supp. 441 (E.D. Va. 1996)............................................................................ 12

*Hammond v. Lowe's Home Centers, Inc.,*
    216 F.R.D. 666 (D. Kan. 2003)................................................................................ 31

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992).................................................................................... 20

*Harris v. Healthcare Serv. Group, Inc.,*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                           ii                    DEFENDANT'S MEMORANDUM OF
                                                               POINTS AND AUTHORITIES

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

No. 06-2903, 2007 U.S. Dist. LEXIS 55221 (E.D.Pa. Jul. 31, 2007)..........................28

4

*Haynes v. Singer Co.,*
696 F.2d 884 (11th Cir. 1983)...................................................................................9

5

*Hinojos v. Home Depot, Inc.,*
2006 U.S. Dist. LEXIS 95434 (D. Nev. Dec. 1, 2006)...............................................21

6

*Hoffman v. Sbarro,*
982 F. Supp. 249 (S.D.N.Y. 1997)............................................................................9

7

8

*Hoffman-LaRoche, Inc. v. Sperling,*
493 U.S. 165 (1989)......................................................................8, 20, 31

9

*Holt v. Rite Aid Corp.,*
333 F. Supp. 2d 1265 (M.D.Ala. 2004) ..................................................11, 22

10

11

*Jackson v. City of San Antonio,*
220 F.R.D. 55 (W.D.Tex. 2003) ..............................................................................29

12

*Leuthold v. Destination America,*
224 F.R.D. 462 (N.D.Cal. 2004)...............................................................................30

13

14

*Levinson v. Primedia, Inc.,*
2003 U.S. Dist. LEXIS 20010 (S.D.N.Y. Nov. 6, 2003) ..........................................22

15

*McLaughlin v. Richland Shoe Co.,*
486 U.S. 128 (1988) .................................................................................................29

16

17

*Mike v. Safeco Ins. Co. of Am.,*
274 F. Supp. 2d 216 (D. Conn. 2003) .................................................................11, 21

18

*Morisky v. Public Serv. Electric & Gas Co.,*
111 F. Supp. 2d 493 (D.N.J. 2000) ..........................................................................22

19

20

*Olivo v. GMAC Mortgage Corp.,*
374 F. Supp. 2d 545 (E.D. Mich. 20040).........................................................2, 10, 31

21

*Parker v. Rowland Express, Inc.,*
2007 U.S. Dist. LEXIS 46049 (D. Minn. June 25, 2007) ..........................................21

22

23

*Perry v. U.S. Bank,*
2001 U.S. Dist. LEXIS 25050 (N.D. Cal. Oct. 17, 2001)..................12, 16, 17, 18, 19

24

*Pfohl v. Farmers Insurance Group,*
2004 U.S. Dist. LEXIS 6447 (C.D. Cal. Mar. 1, 2004) .............................................11

25

26

*Severtson v. Phillips Beverage Co.,*
137 F.R.D. 264 (D. Minn. 1991)..............................................................................31

27

*Smith v. T-Mobile USA, Inc.,*

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF AUTHORITIES**
(continued)

Page

2007 U.S. Dist. LEXIS 60729 (C.D. Cal. Aug. 15, 2007) ............................................ 8

*Spencer v. Regional Acceptance Corp.*,
205 U.S. Dist. LEXIS 45221 (S.D.Fla. Aug. 22, 2005) ................................................ 23

*Tucker v. Labor Leasing, Inc.*,
872 F. Supp. 941 (M.D. Fla. 1994) ............................................................................... 29

*Updite v. Delta Beverage Group, Inc.*,
2006 U.S. Dist. LEXIS 90719 (W.D.La. Dec. 15, 2006) ............................................. 29

*Vinole v. Countrywide Home Loans, Inc.*,
246 F.R.D. 637 (S.D. Cal. 2007) ................................................................... 2, 5, 10, 11

**STATE CASES**

*Dawkins v. GMAC Insurance Holdings, Inc.*,
No. 03-cv-322, 2004 WL. 2035729 (M.D. Fla. Jan. 29, 2004) .................................... 31

*Noland v. St. Paul Fire & Marine Insurance Co., Inc.*,
No. 03-CV-875-T-24, 2003 WL. 23731263 (M.D. Fla. 2003) .................................... 31

*Taylor v. CompUSA, Inc*,
2004 WL. 2563203 ........................................................................................................ 32

*Taylor v. CompUSA, Inc.*,
No. 04-CV-0718, 2004 WL. 2563203 (N.D. Ga. July 14, 2004) ................................. 31

**DOCKETED CASES**

*Chemi v. Champion Morgage*, No. 2:05-cv-01238-WHW-CCC, at 9 .......... 2, 5, 10, 11, 22

*Scott v. Maersk, Inc.*, No. G035746 (Cal. App. Aug. 30, 2006 ........................................ 12

*Ubalde v. Prudential Secs., Inc.*, No. BC245149 at 2-3 (Cal. Super. Ct. Nov. 1,
2004) ............................................................................................................................. 12

**FEDERAL STATUTES**

29 C.F.R. § 541.2 ............................................................................................................. 22

29 C.F.R. § 541.200(a)(2) ............................................................................................ 4, 12

29 C.F.R. § 541.201(c) ....................................................................................................... 4

29 C.F.R. § 541.203(b) ........................................................................................ 4, 5, 12, 13

29 C.F.R. § 541.500(a)(1) .......................................................................................... 5, 6, 13

29 C.F.R. § 541.601(a) ................................................................................................ 6, 13

**TABLE OF AUTHORITIES**
**(continued)**

Page

29 C.F.R. § 541.601(c) ...................................................................................... 6

29 C.F.R. § 541.700(a) ...................................................................................... 12

29 C.F.R. § 541.708 ..................................................................................... 6, 13

29 U.S.C. § 207 .......................................................................................... 4, 21

29 U.S.C. § 213(a)(1) ..................................................................................... 4, 5

29 U.S.C. § 216(b) ............................................................................................ 8

29 U.S.C. § 251(a)(1), (4), (7) .............................................................................. 9

29 U.S.C. § 255(a) ........................................................................................... 29

29 U.S.C. § 201 *et seq* ....................................................................................... 3

I.   **INTRODUCTION**

Plaintiffs Jimmy Trinh ("Trinh") and Eric Storey ("Storey") are former Non-Prime Loan Officers at JPMorgan Chase Bank's ("Chase") Del Mar branch office in California.  Both Trinh and Storey were employed for less than six months, and between them they booked a single loan while employed at Chase.  After several months, Storey's employment was terminated for his failure to book a single loan, and Trinh's employment was terminated after being unceremoniously escorted from the Del Mar office by the police, in handcuffs, following an altercation at the branch office.

Plaintiffs have now filed this overtime litigation against Chase, seeking to certify this case as a nationwide collective action under the federal Fair Labor Standards Act ("FLSA") and to send notice to every current and former Loan Officer at Chase regardless of the positions they held or the duties they performed; how they were paid or the compensation plan that applied to them; the number of loans they routinely book; whether they were full-time or part-time; whether they even worked overtime; who their supervisor was; where across the country they worked or even which state they worked in; and which practices were followed in each of their branch offices.  As this Court so aptly pointed out, Plaintiffs are seeking to certify a "broad class of loan officers" despite the fact that Plaintiffs "are recently hired loan officers with discreet duties, located exclusively in San Diego, California," and that there are "differences in duties, work hours, and physical location" among Chase's loan officers.  (Jan. 31, 2008 Order, Docket No. 24, at 3-4.)

The United States Department of Labor, the agency charged with enforcing and interpreting the FLSA and the application of the overtime exemptions, has made clear that the question of whether mortgage loan officers are exempt necessarily involves a series of individualized inquiries because "an employee's exempt status is not determined based on job title or job classification; rather, it is determined by analyzing each particular employee's actual job duties and compensation under the applicable regulations."  U.S. Department of Labor Opinion Letter, FLSA 2006-31, Sept. 8, 2006.  Federal courts have similarly held that retail mortgage loan officers are too dissimilar to be permitted to pursue overtime claims in a class or

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16

1

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES

collective action. *Vinole v. Countrywide Home Loans, Inc.*, 246 F.R.D. 637, 641 (S.D. Cal. 2007) (Rule 23(f) petition granted) (denying class certification in mortgage loan officer case (Rule 23(f) granted); *Chemi v. Champion Mortgage*, No. 2:05-cv-01238-WHW-CCC, at 9 (D.N.J. June 19, 2006) (denying collective action notice in mortgage loan officer case); *Olivo v. GMAC Mortgage Corp.*, 374 F. Supp. 2d 545 (E.D. Mich. 2004) (denying collective action notice in mortgage loan officer case). As the court cautioned in *Champion Mortgage*, "even at the notice stage, the Court may not blithely assume, as suggested by Plaintiffs, that satisfying the similarly situated standard can be accomplished by alleging in a conclusory fashion that all loan officers throughout the country were subject to the same 'policy of an allegedly improper exemption.'" *Champion Mortgage*, No. 2:05-cv-01238-WHW-CCC, at 3.

To meet their burden and convince this Court that nationwide notice is appropriate, Plaintiffs must offer more than conclusory allegations. Plaintiffs admit that it is their burden to establish:

- the extent of the similarities among the members of the proposed collective action;
- whether there is evidence that the alleged activity was an unlawful Company-wide practice; and
- the extent to which members of the proposed action will rely on common evidence.

(*See* Pltfs.' Mem. of Points & Auth. In Support of Pltfs.' Mot. to Facilitate Not. to Potential Class Members at 6.) Plaintiffs have failed on each count.

First, Trinh and Storey are not similarly situated to Chase's thousands of other loan officers, and those loan officers are not similarly situated to each other. Plaintiffs cannot succeed on this motion because the very issue that they erroneously allege makes them "similarly situated" – that Chase's loan officers have allegedly been "misclassified" as exempt from overtime – requires, as a matter of law, an individualized inquiry to assess each loan officer's exempt status. Chase's loan officers consider themselves to be running independent businesses, and each business is run differently. Loan officer Ron Marder, for example, describes his job as follows: "I am pretty much able to operate my business completely independently. I choose how I deal with customers, and decide which mortgage products to recommend and which vendors to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                                    2                    DEFENDANT'S MEMORANDUM OF
                                                                        POINTS AND AUTHORITIES

1  use (e.g., title companies, attorneys, etc.) entirely on my own." Thus, what job duties a loan

2  officer performs on a day-to-day basis vary based on the choices made by the individual loan

3  officer, as well as the loan officer's level of experience, the level of supervision, and their

4  geographic territory.

5  Second, Plaintiffs have not identified any unlawful policy at Chase, let alone one that

6  applies to every one of its over 3,000 loan officers regardless of job title, job duties, branch office

7  location, or compensation.  Plaintiffs' only argument in this regard is that Chase's loan officers

8  are allegedly classified as exempt and that this, in turn, constitutes some "nationwide policy."

9  This circular theory, however, has been soundly rejected by numerous courts.  In denying

10  conditional certification of a class of loan officers, for example, the court in *Champion Mortgage*

11  held that the decision to classify employees as exempt could not be the basis for issuing

12  nationwide notice because otherwise "every case brought before the courts alleging improper

13  designation as non-exempt employees would automatically qualify for conditional certification."

14  No. 05-cv-01238-WHW-CCC, at 6.

15  Third, there is no question that "common evidence" could never be used in this case.  Any

16  suggestion by Plaintiffs that testimony from Trinh and Storey regarding their job duties – which

17  resulted in Trinh closing one small loan and a complete failure by Storey to ever close a single

18  loan or ever earn a single commission – could ever be used as "common" evidence with respect to

19  any claims by loan officers who cultivated hundreds of client relationships and earned hundreds

20  of thousands of dollars in commissions, simply defies common sense.

21  In short, Plaintiffs have patently failed to demonstrate that Chase's loan officers are

22  sufficiently similarly situated.  As a result, the Court should not allow Plaintiff to send

23  widespread, nationwide court-facilitated notice to dissimilar employees around the country, or to

24  require Chase to provide information regarding thousands of loan officers employed since 2004.

25  ## II.   LEGAL BACKGROUND

26  The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, requires employers to

27  pay employees one and one-half times their regular rates of pay for all hours they work in excess

28  of 40 in a workweek if the employees are not "exempt" under several recognized exemption

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                    3                    DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES

1   categories.  29 U.S.C. § 207.  With respect to Chase's loan officers, any one or more of up to four

2   potentially applicable exemptions under the FLSA may apply to each individual loan officer:  the

3   administrative exemption, the outside sales exemption, the highly compensated employee

4   exemption, and the combination exemption.  As a result, collective treatment of loan officers'

5   claims is inappropriate because an individualized inquiry is required to determine whether *each*

6   *loan officer* qualifies for an exemption (or, in many cases, multiple exemptions) under the FLSA

7   based on particular job duties and how and where those duties were performed.  By way of

8   background, each of these potentially available exemptions is summarized below.

9       **A.    Administrative Exemption.**

10          The FLSA exempts from overtime pay requirements "[a]ny employee employed in a bona

11  fide…administrative . . . capacity."  29 U.S.C. § 213(a)(1).  To meet the administrative

12  exemption, the U.S. Department of Labor ("DOL") regulations provide that the employee's

13  primary duty:  (i) "is the performance of office or non-manual work directly related to the

14  management or general business operations of the employer or the employer's customers;" and

15  (ii) "includes work requiring the exercise of discretion and independent judgment with respect to

16  matters of significance."  29 C.F.R. § 541.200(a)(2)-(3).  This includes "employees acting as

17  advisers or consultants to their employer's clients or customers."  29 C.F.R. § 541.201(c).

18  Specifically addressing the exemption status of employees in the financial services industry, like

19  loan officers, the FLSA Regulations make clear that:

20          Employees in the financial services industry generally meet
            the duties requirements for the administrative exemption if
21          their duties include work such as *collecting and analyzing*
            *information regarding the customer's income, assets,*
22          *investments or debts; determining which financial products*
            *best meet the customer's needs and financial circumstances;*
23          *advising the customer regarding the advantages and*
            *disadvantages of different financial products; and*
24          *marketing, servicing or promoting the employer's financial*
            *products.*
25
    29 C.F.R. § 541.203(b) (emphasis added).
26
            The DOL has issued a recent opinion letter expressly concluding that mortgage loan
27
    officers who perform particular duties are exempt under the administrative exemption.  U.S.
28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
  LOS ANGELES

1-IR/441284.16                                  4                    DEFENDANT'S MEMORANDUM OF
                                                                     POINTS AND AUTHORITIES

1    Department of Labor Opinion Letter, FLSA 2006-31, Sept. 8, 2006.  The administrative

2    exemption applies even if the mortgage loan officer is "involved in some selling to consumers."

3    *Id.* at 4.  Most significantly for purposes of Plaintiffs' motion, the DOL expressly advises that an

4    individualized inquiry is necessary in determining whether a mortgage loan officer is exempt

5    because "an employee's exempt status is not determined based on job title or job classification;

6    rather, it is determined by ***analyzing each particular employee's actual job duties and***

7    ***compensation*** under the applicable regulations."  *Id.* at 1 (emphasis added); *see also Champion*

8    *Mortgage.*, No. 2:05-cv-01238-WHW-CCC, at 9 (denying collective action notice in mortgage

9    loan officer case because "any determination of whether an employee is properly exempted under

10   the FLSA involves a fact-intensive inquiry into each putative class members' employment

11   circumstances"); *Countrywide Home Loans, Inc.*, 246 F.R.D. at 641 (denying class certification in

12   mortgage loan officer case because "in cases where exempt status depends upon an individualized

13   determination of an employee's work, and where plaintiffs allege no standard policy governing

14   how employees spend their time, common issues of law and fact may not predominate").

15               **B.     Outside Sales Exemption.**

16               The FLSA also exempts from overtime pay requirements anyone employed "in the

17   capacity of outside salesman."  29 U.S.C. § 213(a)(1).  To meet the outside salesman exemption,

18   the DOL regulations provide that the employee's primary duty is:  "(i) making sales within the

19   meaning of…the Act, or (ii) obtaining orders or contracts for services or for the use of facilities

20   for which a consideration will be paid by the client or customer;" and "[w]ho is customarily and

21   regularly engaged away from the employer's place or places of business in performing such

22   primary duty."  29 C.F.R. § 541.500(a)(1)-(2).

23               With respect to the application of the outside sales exemption to loan officers, the DOL

24   has again promulgated a recent opinion letter concluding that, depending on the individual duties

25   performed, mortgage loan officers can qualify as exempt outside salespersons.  U.S. Department

26   of Labor Opinion Letter, FLSA 2006-11, Mar. 31, 2006.  It "is the position of the Wage and Hour

27   Division that employees of finance companies who obtain and solicit mortgages may be exempt

28   outside sales employees if they are 'customarily and regularly' engaged away from the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                                5                   DEFENDANT'S MEMORANDUM OF
                                                                 POINTS AND AUTHORITIES

1    employer's place of business in obtaining mortgages from brokers and individuals." *Id.* at 2.

2    Moreover, work that is incidental "to the employee's obtaining the mortgage, such as obtaining

3    credit information from the mortgagor, before and after the sale would qualify as exempt work if

4    done with respect to [the employee's] own sales." *Id.*  Significantly, with respect to Plaintiffs'

5    motion, the DOL again expressly emphasized that "each 'sales force' loan officer must be

6    ***evaluated on an individual basis*** to determine whether he or she qualifies for the outside sales

7    exemption." *Id.*  This individualized inquiry turns on the nature of the duties each loan officer

8    performs, the amount of time the loan officer spends performing those tasks, the relationship of

9    the other duties each loan officer performs to their sales duties, and the amount of time the loan

10    officer spends performing those duties. *Id.*

11          C.    **Highly Compensated Employee Exemption.**

12          The FLSA also exempts from overtime pay requirements any "employee with total annual

13    compensation of at least $100,000" as long as the "employee customarily and regularly performs

14    any one or more of the exempt duties or responsibilities of an...administrative...employee." 29

15    C.F.R. § 541.601(a).  The reason for this is obvious:  "A high level of compensation is a strong

16    indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the

17    employee's job duties." 29 C.F.R. § 541.601(c).  Determining if the highly compensated

18    employee exemption applies would require a determination of whether each loan officer made

19    over $100,000 in compensation and, if so, if each regularly performed a single exempt duty on a

20    regular and consistent basis.

21          D.    **Combination Exemption.**

22          Employees "who perform a combination of exempt duties" such as "executive,

23    administrative, professional, outside sales and computer employees" are also exempt from the

24    FLSA's overtime requirements.  29 C.F.R. § 541.708; *Condren v. Sovereign Chem. Co.*, 1998

25    U.S. App. LEXIS 7071, at *17 (6th Cir. Apr. 3, 1998) (holding that "the combination exemption

26    in the regulations permits 'tacking' of exempt work under separate exemptions to form a

27    combined exemption" in the context of an employee having both administrative and outside sales

28    job duties).  Thus, if a loan officer is engaged in outside sales and administrative duties, but

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16          6          DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES

1    neither set of duties considered separately would constitute the loan officer's "primary duty," the

2    loan officer could be covered under the combination exemption. As with the administrative and

3    outside sales exemptions, determining if the combination exemption applies would require a

4    determination regarding the particularized job duties performed by the employee, the relationship

5    of those job duties, how much time the employee works outside the office, and whether the duties

6    constitute the employee's primary duty.

7    **III.    FACTUAL BACKGROUND**

8         **A.    Chase's Loan Officers.**

9         Chase currently employs over 3,000 loan officers across the United States, including

10   approximately 300 Non-Prime Loan Officers and 2700 Prime Loan Officers. (*See* Statement of

11   James McCraw ("McCraw Stmt.") ¶ 2.)[1]

12        As set forth in detail in these papers, the manner in which Chase's loan officers

13   accomplish their duties varies substantially from loan officer to loan officer. As explained by

14   many of the loan officers themselves in the statements submitted by Defendant in opposition to

15   this motion, the loan officer position is highly entrepreneurial and is akin to running an

16   independent business. (*See, e.g.*, Marder Stmt. at ¶ 10; Garnett Stmt. at ¶ 2 ("In many ways, I

17   consider myself to be similar to a self-employed businessman.").) Thus, as one might expect,

18   there is a significant degree of variation from loan officer to loan officer, with respect to specific

19   job duties, exercise of discretion, hours worked, supervision of employees, level of experience,

20   customer base, and geographic territory where they perform their duties. (McCraw Stmt. ¶ 3.)

21        There is also variation in how loan officers are compensated. For example, Non-Prime

22   Loan Officers have an entirely different compensation plan than Prime Loan Officers. (Schilling

23   Stmt. ¶ 8.) Furthermore, while Non-Prime Loan Officers generally earn more money per loan,

24   Prime Loan Officers generally have higher overall compensation than their non-prime brethren.

25   (*Id.* at ¶ 9.) Compensation also varies significantly from loan officer to loan officer. For

26   example, while Plaintiff Jimmy Trinh closed only one loan and his counterpart Eric Storey never

27

28   [1]  The Statements of loan officers and Chase managers referenced in this Memorandum of Points and Authorities
         are attached as Exhibits A through M of the Declaration of Darren J. Campbell. *See* Campbell Decl. ¶ 2.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                    7                    DEFENDANT'S MEMORANDUM OF
                                                      POINTS AND AUTHORITIES

1   closed a loan and, accordingly, made no commissions, other Chase loan officers made upwards of

2   $275,000 per year. (*See, e.g.*, Haan Stmt. ¶ 14.)

3       **B.    Plaintiffs Trinh And Storey.**

4       Plaintiffs Trinh and Storey were each employed for less than six months at Chase's Del

5   Mar branch office as Non-Prime Loan Officers. (Schilling Stmt. ¶ 2.)  Neither Trinh nor Storey

6   ever worked at any office of Chase other than Del Mar, and neither ever worked as a Prime Loan

7   Officer. (*Id.* at ¶¶ 2-3.)  While other Non-Prime Loan Officers in the Del Mar office of Chase

8   were successful in closing loans, Mr. Trinh was able to close only one loan and Mr. Storey never

9   even closed a single loan. (*Id.* at ¶ 4.)  In fact, Mr. Storey was warned and ultimately terminated

10  by Chase because of his failure to ever close a loan, demonstrating that whatever methods he

11  employed in his job to perform his job duties were wholly unsuccessful. (*Id.* at ¶ 5.)  Chase

12  terminated Mr. Trinh, in contrast, following his unceremonious removal from Chase's premises

13  by the police in handcuffs following an altercation in the Del Mar office. (*Id.* at ¶ 6.)

14  **IV.    IT IS WITHIN THIS COURT'S DISCRETION TO DETERMINE IF NOTICE IS
         APPROPRIATE.**

15

16      **A.    The Court Has Absolute Discretion To Deny The Sending Of Notice To
              Potential Class Members.**

17      This Court has absolute discretionary power to deny the sending of notice to potential

18  class members in a collective action under 29 U.S.C. § 216(b).  The United States Supreme Court

19  has made clear that the Court's discretion to permit the sending of the notice should be exercised

20  "only in appropriate cases," where the plaintiffs have met their burden. *Hoffman-LaRoche, Inc. v.*

21  *Sperling*, 493 U.S. 165, 170 (1989); *Smith v. T-Mobile USA, Inc.*, 2007 U.S. Dist. LEXIS 60729,

22  at *6 (C.D. Cal. Aug. 15, 2007) ("It is within the discretion of the district court to determine

23  whether a certification of a §216(b) collective action is appropriate."); *Camper v. Home Quality*

24  *Mgmt. Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000) ("The relevant inquiry then is not whether the

25  Court has discretion to facilitate notice, but whether this is an appropriate case in which to

26  exercise discretion.").  In exercising its discretion, the Court has the responsibility to avoid the

27  stirring up of litigation through unwarranted solicitation in a collective FLSA action. *Freeman v.*

28  *Wal-Mart Stores*, 256 F.Supp.2d 941, 944 (W.D. Ark. 2003).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                          8                    DEFENDANT'S MEMORANDUM OF
                                                            POINTS AND AUTHORITIES

1    At the first step in the two-tiered approach for certification, the Court must consider all of

2  the evidence and declarations before it to determine whether Plaintiffs have made a sufficient

3  *factual showing* that they and the purported class were "similarly situated" victims of an *illegal*

4  *and common* policy or plan. *Hoffman v. Sbarro*, 982 F.Supp. 249, 261-62 (S.D.N.Y. 1997).

5  Plaintiffs must make their showing with competent *evidence*, and neither unsupported assertions

6  nor conclusory allegations will suffice. *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983)

7  (affirming district court's denial of notice where judge had before him only "unsupported

8  assertions that FLSA violations were widespread and that additional plaintiffs would come from

9  other stores"); *Bernard v. Household Int'l, Inc.*, 231 F.Supp.2d 433, 435 (E.D. Va. 2002) ("Mere

10  allegations will not suffice; some factual evidence is necessary."); *H&R Block, Ltd. v. Housden*,

11  186 F.R.D. 399, 400 (E.D. Tex. 1999) (denying certification where the plaintiffs relied on

12  "unsupported assertions" and "affidavits making conclusory allegations").

**B.    The FLSA's Collective Action Procedure Was Intended To Limit Employees' Ability To Proceed Collectively.**

15    Plaintiffs' motion, which assumes that the purpose of the FLSA's collective action

16  procedure is to stir up as many FLSA claims as possible, is based on a faulty understanding of the

17  statute and its history.  Over sixty years ago, in response to a flood of "representative" litigation,

18  Congress amended the FLSA to *limit* the ability of employees to proceed collectively.  Indeed, in

19  the Portal-to-Portal Act of 1947, Congress precluded representative actions and expressly limited

20  FLSA actions to similarly situated individuals who have filed a consent to join the case.

21  Congress declared in the statute itself that the explosion of FLSA litigation threatened to "bring

22  about financial ruin of many employers and seriously impair the capital resources of many

23  others," and that, in the absence of these limitations, "employees would receive windfall

24  payments" and "the courts of the country would be burdened with excessive and needless

25  litigation and champertous practices would be encouraged."  29 U.S.C. § 251(a)(1), (4), (7).

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                               9                          DEFENDANT'S MEMORANDUM OF
                                                                         POINTS AND AUTHORITIES

1
2

V.   **PLAINTIFFS HAVE NOT MET THEIR BURDEN TO DEMONSTRATE THAT THEY ARE SIMILARLY SITUATED TO OTHER CHASE LOAN OFFICERS.**

3

Although it is not Chase's burden to show that the purported class of thousands of loan

4

officers are not similarly situated, the evidence now before the Court unquestionably

5

demonstrates just that, *i.e.*, that the thousands of current and former Chase loan officers Plaintiffs

6

want to lump together *are not similarly situated in any way* that is relevant to their FLSA claims

7

or to the applicable exemptions.  Specifically, Chase has submitted substantive sworn statements

8

from loan officers and managers throughout the country demonstrating the significant

9

individualized inquiries that this case would entail, based on the varying job duties and

10

compensation of Chase's loan officers.

11

A.   **Plaintiffs Cannot Be Similarly Situated To Other Loan Officers Because Determining Plaintiffs' (And Putative Class Members') Exempt Status Necessarily Involves Individualized Inquiries.**

12
13

Determining Plaintiffs' exempt status – as well as the exempt status of the thousands of

14

loan officers they purport to represent – involves an analysis of each individual loan officer's

15

daily job duties, the time spent performing those duties, and where the job duties were performed

16

under the administrative, outside salesperson, highly compensated employee, and combination

17

exemption tests of the FLSA.  As discussed above, the DOL has concluded that an individualized

18

inquiry is necessary in determining whether a mortgage loan officer is exempt because "an

19

employee's exempt status is not determined based on job title or job classification; rather, it is

20

determined by *analyzing each particular employee's actual job duties and compensation* under

21

the applicable regulations."  U.S. Department of Labor Opinion Letter, FLSA 2006-31, Sept. 8,

22

2006 (emphasis added).  Other courts have denied conditional and class certification to putative

23

classes of mortgage loan officers because an individualized inquiry into each loan officer's

24

exemption status is required.  *See Champion Mortgage*, No. 2:05-cv-01238-WHW-CCC;

25

*Countrywide Home Loans, Inc.*, 246 F.R.D. at 641; *Olivo*, 374 F. Supp. 2d 545.  In *Champion*

26

*Mortgage*, as here, plaintiffs moved for conditional certification of the matter as a collective

27

action under the FLSA.  *Champion Mortgage*, No. 2:05-cv-01238-WHW-CCC at 2.  The basis of

28

plaintiffs' claims in *Champion Mortgage*, like the basis of Plaintiffs' claims here, was that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                                         10                    DEFENDANT'S MEMORANDUM OF
                                                                            POINTS AND AUTHORITIES

1    Champion Mortgage misclassified plaintiffs, and other similarly situated loan officers, as exempt.

2    *Id.* at 3. The *Champion Mortgage* Court cautioned that "even at the notice stage, the Court may

3    not blithely assume, as suggested by plaintiffs, that satisfying the similarly situated standard can

4    be accomplished by alleging in a conclusory fashion that all loan officers throughout the country

5    were subject to the same 'policy of an allegedly improper exemption.'" *Id.* (quoting *O'Donnell v.*

6    *Robert Half Int'l, Inc.*, 2006 U.S. Dist. LEXIS 16189, at *8 (D. Mass. Mar. 20, 2006)).  In

7    denying the motion, the Court held that "any determination of whether an employee is properly

8    exempted under the FLSA involves a fact-intensive inquiry into each putative class members [sic]

9    employment circumstances."  *Champion Mortgage*, No. 2:05-cv-01238-WHW-CCC, at 9.

10   Likewise, a court within this district has also recognized that class treatment is not appropriate in

11   a mortgage loan officer case because the "exempt status depends upon an individualized

12   determination of an employee's work."  *See Countrywide Home Loans, Inc.*, 246 F.R.D. at 641.

13           Indeed, courts both within and outside of this Circuit have observed:  "[T]he 'similarly

14   situated' inquiry in this case must be analyzed in terms of the nature of the job duties performed

15   by each putative plaintiff, because the ultimate issue to be determined is whether each employee

16   was properly classified as exempt." *See Holt*, 333 F. Supp. 2d at 1272 (denying collective action

17   notice to store managers and assistant store managers where duties of each employee needed to be

18   individually evaluated); *see also Pfohl v. Farmers Ins. Group*, 2004 U.S. Dist. LEXIS 6447, at

19   *27 (C.D. Cal. Mar. 1, 2004) ("[D]iffering job duties and [an] individualized inquiry to determine

20   whether these varying duties meet the administrative exemption preclude a collective action.");

21   *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003) (describing the

22   exemption inquiry as "extremely individual and fact-intensive"); *Clausman v. Nortel Networks,*

23   *Inc.*, No. 02-0400-C-M/S, 2003 U.S. Dist. LEXIS 11501, at *10 (S.D. Ind. May 1, 2003) (holding

24   that a determination of whether plaintiff was correctly classified requires "the Court . . . to make a

25   fact-intensive inquiry into each potential plaintiff's employment situation"); *Dean v.*

26   *Priceline.com, Inc.*, No. 3:00 Civ. 1273, 2001 U.S. Dist. LEXIS 24982, at *7 (D. Conn. June 5,

27   2001) (denying motion for collective treatment of FLSA action and stating that "[d]etermining

28   whether an employee is exempt is extremely individual and fact-intensive, requiring 'a detailed

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

I-IR/441284.16                                11                    DEFENDANT'S MEMORANDUM OF
                                                                   POINTS AND AUTHORITIES

1    analysis of the time spent performing administrative duties' and 'a careful factual analysis of the

2    full range of the employee's job duties and responsibilities'" (internal citations omitted)); *Perry v.*

3    *U.S. Bank*, 2001 U.S. Dist LEXIS 25050, at *15 (N.D. Cal. Oct. 17, 2001) (denying class

4    certification and requiring a "detailed, fact-specific determination…for evaluating whether a

5    particular employee is exempt or non-exempt"); *Ubalde v. Prudential Secs., Inc.*, No. BC245149

6    at 2-3 (Cal. Super. Ct. Nov. 1, 2004) (discussing the need for "a fact intensive and highly

7    individualized inquiry into the exempt status" of the individual employees).

8            Here, the individualized inquiries required demonstrate that the loan officers Plaintiffs

9    seek to represent are not "similarly situated" to them.  This Court will need to make the following

10   determinations, among others, to adjudicate Plaintiffs' federal claims and the federal claims of

11   every other loan officer they purport to represent:

12   •   the job duties actually performed by each loan officer on a daily basis, *Haines v.
         Southern Retailers, Inc.* 939 F. Supp. 441, 447 (E.D. Va. 1996) (holding that, in
13       determining whether an employee is exempt from overtime, the "focus must
         necessarily be on what 'activities or duties the employee *actually* performs'");
14

15   •   the time the loan officer spent performing each of his or her day-to-day tasks, *see,
         e.g.*, U.S. Department of Labor Opinion Letter, FLSA 2006-11, Mar. 31, 2006; *Scott
16       v. Maersk, Inc.*, No. G035746 (Cal. App. Aug. 30, 2006) (denying class certification
         where "plaintiff will not be able to present at trial a *prima facie* case that every
17       member of the class spends 50% or more of the time engaged in duties which are not
         executive or administrative without calling each member of the class");

18   •   the importance of each duty performed by the loan officer; 29 C.F.R. § 541.700(a);

19   •   whether and to what extent the loan officer's job duties involved the exercise of
         discretion and independent judgment, 29 C.F.R. § 541.200(a)(2)-(3);
20

21   •   whether the loan officer's job duties involved the performance of work directly
         related to the management or general business operations of Chase or Chase's
22       customers, 29 C.F.R. § 541.200(a)(2)-(3);

23   •   whether the loan officer collected and analyzed information regarding the customers'
         income, assets, investments or debts and, if so, what amount of their time was spent
24       performing this function, 29 C.F.R. § 541.203(b);

25   •   whether the loan officer determined which financial products best met the customer
         needs and financial circumstances and, if so, what amount of their time was spent
26       performing this function, 29 C.F.R. § 541.203(b);

27   •   whether the loan officer advised customers regarding the advantages and
         disadvantages of financial products and, if so, what amount of their time was spent
28       performing this function, 29 C.F.R. § 541.203(b);

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                    12                    DEFENDANT'S MEMORANDUM OF
                                                        POINTS AND AUTHORITIES

- whether the loan officer was engaged in marketing, servicing or promoting Chase's financial products and, if so, what amount of their time was spent performing this function, 29 C.F.R. § 541.203(b);

- the extent to which the loan officer engaged in sales duties; 29 C.F.R. § 541.500 (a)(1)-(2);

- the extent to which the loan officer engaged in duties that are ancillary to exempt sales duties, U.S. Department of Labor Opinion Letter, FLSA 2006-11, Mar. 31, 2006;

- the amount of time the loan officer worked outside of the office.  29 C.F.R. § 541.500(a)(1)-(2);

- whether the loan officer made over $100,000 in compensation and, if so, if they regularly performed a single exempt duty on a regular and consistent basis, 29 C.F.R. § 541.601(a); and

- whether the loan officer performed a sufficient mix of different types of exempt duties to qualify for the combination exemption, 29 C.F.R. § 541.708.

**B.      Plaintiffs Are Not Similarly Situated To Other Loan Officers, And Those Other Loan Officers Are Not Similarly Situated To Each Other.**

What duties a loan officer performs, how much time they devote to each, how much time they spend outside the office engaged in sales, and how many hours each loan officer works will necessarily vary based on a host of factors, including each loan officer's specific job duties, compensation, exercise of discretion, level of experience, customer base, and geographic territory.  As many of Chase's loan officers have stated, they are essentially running their own independent businesses.  (*See, e.g.*, Marder Stmt. at ¶ 10; Garnett at Stmt. ¶ 2 ("In many ways, I consider myself to be similar to a self-employed businessman.").)  As Non-Prime Loan Officer Ron Marder described his job:  "I am pretty much able to operate my business completely independently.  I choose how I deal with the customers, and decide which mortgage products to recommend and which vendors to use (e.g., title companies, attorneys, etc.) entirely on my own."  (Marder Stmt. ¶ 10.)

Each of these "independent businesses" is run differently by each loan officer, and it follows that the job duties of those loan officers vary substantially, including with respect to:

- how each loan officer obtains their customers, including the duties the loan officer performs to obtain and retain customers, and how much time they spend doing so;

- whether or not the loan officers take the time to attend each loan's closing;

- how the advice the loan officers give to each of their clients varies;

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                                          13                              DEFENDANT'S MEMORANDUM OF
                                                                                            POINTS AND AUTHORITIES

- whether the loan officer has an assistant and, if so, how that changes the loan officer's job duties and the amount of time they spend performing those duties;

- how each loan officer's local manager affects that loan officer's job duties;

- the number of loans each loan officer books and closes; and

- how much time each loan officer spends outside the office.

Every one of these differences affects the loan officers' job duties and any one of them, standing alone, is sufficient to demonstrate why Plaintiffs' motion should not succeed. Taken together, they clearly demonstrate that Plaintiffs are not similarly situated to Chase's other loan officers.

            a.      **The Job Duties Of Chase's Loan Officers Vary With Respect To How They Generate Business.**

How each loan officer generates his or her business significantly affects each Loan Officer's day-to-day job duties. Loan officers whose clients are primarily "self-sourced" – meaning they spend most, or a significant amount, of their time cultivating personal relationships with builders, realtors, other professionals in the real estate industry, and other potential contacts – generally spend significantly more time on identifying and generating potential client relationships than their counterparts who receive the bulk of their business referrals from Chase's collections employees or other loan officers. (McCraw Stmt. ¶ 4; *see* Kasperick Stmt. ¶ 6); *see Ubalde*, No. BC245149 at 2-3 (discussing the need for "a fact intensive and highly individualized inquiry into the exempt status" of individuals based on their "client focus").

Some Chase loan officers are 100% "self-sourced." (Kasperick Stmt. ¶ 13.) In these cases, the loan officers often spend a large amount of their time, in some instances up to 75%, outside the office. (*Id.* at ¶ 6.) Yet other "self-sourced" Non-Prime Loan Officers generate business based on the contacts that they brought with them from other financial institutions. Non-Prime Loan Officer Russell Griffin, for example, brought business with him from prior employment with Wells Fargo, and these prior relationships comprise 50% of his current business. (Griffin Stmt. ¶ 9).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16

14

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES

1   Yet other loan officers receive extensive referrals from Chase's collections department,

2   and those loan officers spend a significant amount of time cultivating relationships with Chase

3   employees in the collections department.  (Garnett Stmt. ¶¶ 6, 8; *but see* Kasperick Stmt. ¶ 13.)

4   Some Non-Prime Loan Officers receive substantial referrals from Prime Loan Officers, and spend

5   time developing those relationships with other loan officers.  (Kerin Stmt. ¶ 7; Marder Stmt.

6   ¶ 13.)  Additionally, there are many examples of individuals that do not fall squarely into any of

7   these categories, but use a mix of sources for generating business.  (*See, e.g.*, Griffin Stmt. ¶ 10.)

8           **b.**    **The Job Duties Of Loan Officers Vary Depending On Whether They Attend The Loan Closings.**

9   Whether each Chase loan officer attends loan closings significantly affects each Loan

10  Officer's day-to-day job duties.  There is no Chase policy or requirement regarding a loan

11  officer's attendance at loan closings.  (McCraw Stmt. ¶ 6.)  Some loan officers, however, have

12  nonetheless elected to attend the vast majority of the loan closings for the customers they service.

13  (Griffin Stmt. ¶ 13; Marder Stmt. ¶ 16.)  Attending a significant percentage of loan closings is a

14  time commitment which diverts time that a loan officer could be spending on other tasks, such as

15  developing new business or speaking with clients.  (McCraw ¶ 6.)  Loan officers who attend

16  closings do so to "build relationships with [ ] customers and to answer any questions that may

17  come up during the closing."  (Griffin Stmt. ¶ 13); *see Ubalde*, No. BC245149 at 2-3 (discussing

18  the need for "a fact intensive and highly individualized inquiry into the exempt status" of

19  individuals based on their "personal drive, ambition, intelligence and organizational and inter-

20  personal skills").

21  Other loan officers never, or very rarely, attend the loan closings.  (Garnett Stmt. ¶ 9.)

22  Because so many of loan officer Fred Garnett's loans are out-of-state, for example, he does not

23  attend the closings.  (Garnett Stmt. ¶ 9.)  Loan officer Michael Kerin elects not to attend closings,

24  but for an entirely different reason.  (Kerin Stmt. ¶ 14.)  He "rarely attend[s] the closings for [his]

25  customers [because he] feel[s his] time is better spent finding new customers and servicing

26  existing customers in other ways."  (*Id.*)  Still other loan officers attend loan closings on a

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16

15

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES

1    sporadic basis when "time permits" or when there's "a good chance to network and develop

2    referral sources for potential future clients." (Kasperick Stmt. ¶ 9.)

3            **c.**     **The Job Duties Of Chase's Loan Officers Vary Based On Each Loan Officer's Experience.**

4

5        Each Loan Officer's experience in the industry significantly affects each Loan Officer's

     day-to-day job duties. *See Perry*, 2001 U.S. Dist LEXIS 25050, at *15 (denying class
6
     certification because job duties of putative class were different based on the individual's
7
     experience in banking industry); *Ubalde*, No. BC245149 at 2-3 (discussing the need for "a fact
8
     intensive and highly individualized inquiry into the exempt status" of individuals based on their
9
     "experience"). While Trinh and Storey were Non-Prime Loan Officers with only a few months'
10
     experience at Chase, many of Chase's other loan officers perform their duties differently as a
11
     result of their deep and long-term experience in the industry. The advice that Prime Loan Officer
12
     Mitchell Haddad gives to his clients, for example, is heavily influenced by his decades of
13
     experience. "In addition, with 27 years of industry experience in Boston, I also have substantial
14
     knowledge of the local real estate market and often offer clients my insight about local real estate,
15
     realtors, and attorneys. In many ways, I compare what I do as a loan officer to a consultant or
16
     attorney: I counsel my clients about the risks and benefits of a course of action so that they are
17
     able to make an informed decision." (Haddad Stmt. ¶ 3.)
18
             **d.**     **The Job Duties Of Chase's Loan Officers Vary Based Upon Whether The Loan Officer Spends A Significant Amount Of Time On Credit Counseling.**
19

20
         Whether each Loan Officer spends a significant amount of time counseling customers
21
     about their credit significantly affects each Loan Officer's day-to-day job duties. One significant
22
     difference in the type of advice loan officers give to customers is the extent to which each loan
23
     officer spends time engaged in credit counseling for their customers. *See Perry*, 2001 U.S. Dist
24
     LEXIS 25050, at *15 (denying class certification because job duties differed with respect to the
25
     "style of the individual personal banker in offering financial advice and analysis to clients").
26
     Some of Chase's loan officers, for example, "take a lot of pride in being able to help [the]
27
     customers improve their credit scores." (Robinson Stmt. ¶ 8.) In that advisory role, the loan
28

1   officer may discuss topics such as: explaining why a client's credit score is low; correcting

2   discrepancies on their clients' credit reports; keeping credit card balances low; making timely

3   payments on consumer credit lines; and paying off any judgments or liens recorded against the

4   client. (Robinson Stmt. ¶ 8; Kerin Stmt. ¶ 10; Marder Stmt. ¶ 7.) The loan officer may also

5   determine, in the case of a particular client, "how to best structure a loan, how much money to put

6   down, and whether to ask the seller to contribute towards the closing costs." (Haan Stmt. ¶ 4.)

7        Other loan officers spend no time, or significantly less time, giving advice about credit

8   and, instead, focus their advice efforts on Chase's products. (Garnett Stmt. ¶¶ 3-4 (indicating that

9   as a Non-Prime Loan Officer he "spent approximately 60% of my work day advising clients on

10   which loan products were best for them," but that he usually did not "give detailed advice about

11   how [a client] might improve [their credit score]"); Kerin Stmt. ¶ 3; Haan Stmt. ¶ 5 (stating that

12   he "do[es] not advise [his] clients on how to increase their credit scores to obtain a better loan

13   product because [he is] not a credit counselor); Haddad Stmt. ¶ 6 ("Because I deal with a higher-

14   end client base, I rarely get into offering clients advise on how to improve their credit. But even

15   in the rare situations where this issue does come up, I tend to avoid offering specific advice

16   because I do not consider improving credit to be my area of expertise. Instead, I refer clients to

17   other resources that specialize in this area."); Ketchum Stmt. ¶ 3 (stating that he works "with

18   residential developers to provide purchase money mortgages for buyers of newly constructed

19   units in downtown Los Angeles" and indicating that he advises clients about the risks and benefits

20   associated with the term of a particular loan and what are good escrow companies to use).)

21             **e.**     **The Job Duties Of Non-Prime Loan Officers Vary Depending**

22                     **On Their Use Of An Assistant.**

23        Whether each Loan Officer uses an Assistant significantly affects each Loan Officer's

24   day-to-day job duties. *Perry*, 2001 U.S. Dist LEXIS 25050, at *15 (denying class certification

25   because putative class members' job duties differed because some "supervised sales assistants"

26   while others did not). Some loan officers have Assistants who assist the loan officer and can

27   perform tasks ranging from requesting financial information from clients, ordering appraisals, and

28   processing administrative paperwork, which frees the loan officer up to do other tasks. (*See, e.g.,*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16

17

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES

1    Robinson Stmt. ¶ 13).  On the other hand, of the loan officers who have an Assistant, some also

2    have sole (or shared) supervisory responsibility for the Assistant and, thus, have to spend an

3    increased amount of time supervising their Assistant.  (*Id.*)  There are a number of reasons a loan

4    officer may want to use an Assistant to support their business, including because: (i) they believe

5    the additional help will assist them in expanding the number of clients they are able to service;

6    (ii) they believe the additional help will permit them to spend more time with their families or

7    engage in other non-work activities; or (iii) because they just prefer to avoid the tasks that an

8    Assistant can perform for them.  (McCraw Stmt. ¶ 6.)

9          Other loan officers, in contrast, do not have Assistants at all.  (*See, e.g.*, Griffin Stmt.

10   ¶ 14.)  Fred Garnett, a former loan officer, indicated that his use of an Assistant approximately

11   doubled the amount of loan applications he could submit daily.  (Garnett Stmt. ¶ 10.)  Ron

12   Marder, in contrast, indicated that he was assigned an Assistant prior to her layoff in November

13   of 2007, but that he did not utilize her services.  (Marder Stmt. ¶ 9.)

14
15                    **f.     The Job Duties of Loan Officers Vary Based On How Many
                              Loans They Close.**

16         How many loans each Loan Officer closes significantly affects each Loan Officer's day-

17   to-day job duties.  *See Ubalde*, No. BC245149 at 2-3 (Cal. Super. Ct. Nov. 1, 2004) (discussing

18   the need for "a fact intensive and highly individualized inquiry into the exempt status" of

19   individuals based on their "personal drive, ambition, intelligence and organizational and inter-

20   personal skills").  While Plaintiff Jimmy Trinh closed only one loan and Eric Storey never

21   booked or closed  a loan at all (Schilling Stmt. ¶ 4), several of Chase's loan officers routinely

22   book and close as many as twelve to fifteen loans in a month.  (Haddad Stmt. ¶ 13 (books and

23   closes twelve loans monthly); Ketchum Stmt. ¶ 11 (books 20-25 loans monthly, and closes 10-15

24   of those loans).)  In fact, loan officer Kevin Ketchum stated that he sometimes has more loans and

25   potential loans than he can handle himself and, when this occurs, he gives some of his work to

26   more junior loan officers.  (Ketchum Stmt. ¶ 15.)

27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                              18                    DEFENDANT'S MEMORANDUM OF
                                                                  POINTS AND AUTHORITIES

g.   **The Job Duties Of Loan Officers Vary Depending On Their Managers.**

Each individual loan officer's manager, and that manager's unique practices, significantly affects that Loan Officer's day-to-day job duties.  (McCraw Stmt. ¶ 3); *see Perry*, 2001 U.S. Dist LEXIS 25050, *15 (denying class certification because putative class members' job duties differed due to the "management style of local branch and district managers"); *Ubalde*, No. BC245149 at 2-3 (discussing the need for "a fact intensive and highly individualized inquiry into the exempt status" of individuals based on "the identity, experience and managerial policies and philosophies" of the employee's manager and how that "impacted his or her duties and responsibilities").  Plaintiffs Trinh and Storey, for example, allege that "towards the end of [their] employment, [their] branch manager instituted a 'mandatory' weekend lead call generation," which allegedly required Plaintiffs to work "3 hours during the weekend."  (Pltfs.' Decls., ¶ 9.)  There is no similarly between Plaintiffs, however, and Chase's loan officers with respect to this local practice.  Some loan officers never make cold calls at all (*see, e.g.*, Ketchum Stmt. ¶ 8 ("I have never cold called...."); Marder Stmt. ¶ 14), and yet others made some lead calls but are not required by Chase, or their managers, to do so.  (Haan Stmt. ¶ 10 ("I take and make lead calls at my own discretion, and estimate that I take approximately 20-25 lead calls per day.  Chase has never required me to participate in office-wide 'call nights' or call time on weekends.").

As another example of how loan officers' duties are affected by their individual managers, although most of the loan officers are not required to "create" production or "sales reports" for their supervisors, (*see, e.g.*, Marder Stmt.¶ 11), other managers require weekly or monthly sales reports.  (Kerin Stmt. ¶ 13.)  Yet other loan officers voluntarily prepare such reports "to keep [the manager] informed" of the loan officer's activities even though their manager does not require such reporting.  (Robinson Stmt. ¶ 10.)  Loan officers with weekly reporting requirements, or those who elect to report on a regular basis, are spending time on that reporting that they would otherwise be spending on other duties.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                                    19                    DEFENDANT'S MEMORANDUM OF
                                                                        POINTS AND AUTHORITIES

### h.   The Compensation Of Loan Officers Vary.

Job duties are not the only significant difference among Chase's loan officers.  Loan officers' compensation varies widely as well.  Plaintiffs Eric Storey and Jimmy Trinh earned a base salary but, with respect to additional commissions, Storey never closed a loan while employed by Chase, and Trinh only closed a single loan.  (Schilling Stmt. ¶ 4.)  Many of Chase's other loan officers, in contrast, made up to hundreds of thousands of dollars in compensation annually.  (Garnett Stmt. ¶ 13 (earnings of between $185,000 and $210,000 annually over the past several years), Haan Stmt. ¶ 14 (earned more than $200,000 annually since 2004, and $275,000 in 2007), Ketchum Stmt. ¶ 16 (earned $250,000 in compensation for the last two years), Haddad Stmt. ¶ 17 (earned more than $100,000 in the last two years).)  Commissions will vary based upon the number of loans which close during a given time period, and there are other things that can affect a loan officer's compensation as well.  (Schilling Stmt. ¶ 10.)  For example, some Non-Prime Loan Officers, but not all, make extra money in commissions by referring customers to Prime Loan Officers.  (*Compare* Griffin Stmt. ¶ 11 ("I give two referrals a month, on average, to Chase Prime Loan Officers.") *with* Garnett Stmt. ¶ 15 ("None of my commissions come from referrals to Prime Loan Officers.").)

As these widespread differences in duties and compensation demonstrate, Plaintiffs Trinh and Storey simply are not similarly situated to the thousands of loan officers to whom they seek to send notice in this case, and those loan officers are not even similarly situated to each other.  The premise underlying the policy of the efficient resolution of claims in "one" proceeding, *Hoffmann-LaRoche*, 493 U.S. at 170, is that those issues would otherwise be litigated in a multiplicity of cases.  Clearly, there are no judicial efficiencies to be gained by inviting thousands of workers to file claims that need to be litigated individually.  This is particularly true where the short-term former loan officers who are spearheading this solicitation effort – Trinh and Storey – were both terminated from employment and closed only one loan between them. *See, e.g., Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (holding that "a named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it'").  The Court should

1    not permit Court-sponsored notice to be used as a means of corralling a group of clients that

2    Plaintiffs' counsel were not able to obtain on their own. *Parker v. Rowland Express, Inc.*, 2007

3    U.S. Dist. LEXIS 46049, at *14 (D. Minn. June 25, 2007) ("[A]n FLSA plaintiff is not entitled to

4    conditional certification simply to seek out others who might wish to join the action.").

5    **VI.    PLAINTIFFS HAVE NOT, AND CANNOT, SHOW AN UNLAWFUL POLICY
6          RELATING TO LOAN OFFICERS JUSTIFYING THEIR REQUEST FOR
          NOTICE.**

7          Consistent with the judicial efficiency considerations underlying a collective action, courts

8    have required plaintiffs to demonstrate "that they and potential plaintiffs together were victims of

9    a common policy or plan that violated the law," or that there is a sufficient "factual nexus" to

10   permit the adjudication of the claims on a common basis. *Hinojos v. Home Depot, Inc.*, 2006

11   U.S. Dist. LEXIS 95434, at *6 (D. Nev. Dec. 1, 2006) ("[T]he need for separate mini-trials to

12   resolve each individual's claim . . .is the antithesis of collective action treatment."); *Mike*, 274 F.

13   Supp. 2d at 220 ("[T]the court must be satisfied that there is a basis to conclude that questions

14   common to a potential group of plaintiffs would predominate a determination of the merits in this

15   case."). Plaintiffs have not identified any policy or nexus that would permit the Court to

16   adjudicate overtime claims of a nationwide class of Chase's loan officers on a common basis.

17         **A.    The Classification Of Loan Officers As Exempt Is Insufficient.**

18         Plaintiffs failed to identify an ***unlawful*** nationwide policy at Chase that applies to each

19   and every one of its loan officers regardless of job title, job duties, location, or compensation.

20   This failure is fatal to Plaintiffs' request for nationwide notice.

21         Chase has no nationwide policy, nor do Plaintiffs even allege one, of requiring its loan

22   officers to work more than 40 hours in a workweek. (Schilling Stmt. ¶13.) Plaintiffs' only

23   argument in support of their motion appears to be that they were classified as exempt. (*See, e.g.*,

24   Pltfs.' Mot. at 2:23-24; 6:24-25.) The FLSA, however, does not prohibit an employer from

25   treating a group of employees as exempt; rather, an employer only violates the FLSA where it

26   fails to pay overtime to an employee to whom no exemption category applies. *See* 29 U.S.C.

27   § 207.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                    21                    DEFENDANT'S MEMORANDUM OF
                                                        POINTS AND AUTHORITIES

1    Moreover, Plaintiffs' position has been soundly rejected by courts nationwide.  An

2    employer's classification (or alleged misclassification) of employees is not a "policy" or

3    "practice" that can support a motion for FLSA notice.  *See Champion Mortgage*, No. 05-cv-

4    01238-WHW-CCC, at 6 (denying conditional certification of a class of "loan officers" where the

5    "plan or scheme as alleged by plaintiffs is that defendants improperly categorized them as exempt

6    under the FLSA" because if that were true "every case brought before the courts alleging

7    improper designation as non-exempt employees would automatically qualify for conditional

8    certification"); *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1270-71 (M.D.Ala. 2004) (rejecting

9    plaintiffs' argument that the decision to classify store managers as exempt was a "policy" where

10   the "similarly situated inquiry" would "require a fact-intensive determination"); *Levinson v.

11   Primedia, Inc.*, 2003 U.S. Dist. LEXIS 20010, at *5 (S.D.N.Y. Nov. 6, 2003)(finding that

12   plaintiffs' allegations that guides were misclassified company-wide was not sufficient to warrant

13   notice); *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003)

14   ("Adopting Plaintiffs' position would require us to conclude that if an employer has two or more

15   non-officer, salaried employees who allegedly are not being paid overtime as required by the Act,

16   then a collective action would be appropriate under 216(b) . . . .We do not agree."); *Morisky v.

17   Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (denying plaintiffs' motion

18   to certify the putative class because the "'common' . . . 'plan' or 'scheme'" alleged by plaintiffs

19   was nothing more than defendant's "determination that they are exempt under the FLSA"); *Diaz

20   v. Electronics Boutique of Am., Inc. & Electronic Boutique Holding Corp.* 2005 U.S. Dist. LEXIS

21   30382, at *13 (W.D.N.Y. Oct. 13, 2005) (quoting *Morisky*); *Dean*, 2001 U.S. Dist. LEXIS 24982,

22   at *7 (rejecting the claim that "the putative class members are similarly situated because all were

23   denied overtime pay as a result of being misclassified as exempt").

24       An employee's subjective belief that he or she is non-exempt, even coupled with the fact

25   that there are other employees in the same job title, is simply insufficient to warrant notice.  *See,

26   e.g., Morisky*, 111 F. Supp. 2d at 498 (refusing to authorize collective action, holding that "[e]ven

27   employees who hold the same job title do not necessarily perform the same work"); 29 C.F.R.

28   § 541.2 (observing that job title *or classification* alone is insufficient for an FLSA exemption

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                    22              DEFENDANT'S MEMORANDUM OF
                                                 POINTS AND AUTHORITIES

1   determination and that exempt status must be determined based on an employee's duties).

2   Accordingly, Plaintiffs' motion for notice fails on this ground alone.

3   **B.    Plaintiffs' Sparse Allegations Of Localized Practices Similarly Do Not**
    **Constitute An Illegal Practice Sufficient To Support Their Motion.**
4

5   Cognizant of the fact that their exemption classification allegations do not constitute an

6   unlawful nationwide policy sufficient to sustain their motion, Plaintiffs unsuccessfully attempt to

    create an impression of uniformity across the loan officers' job duties and functions.  Plaintiffs'
7
    burden is clear:  "Although the plaintiff must meet only a liberal standard for determining
8
    whether there are other 'similarly situated' employees, there must be *some* evidence on which a
9
    reasonable inference about this could be made."  *Id.* (emphasis in original).  Moreover, Plaintiffs
10
    must provide evidence "[o]ther than conclusory allegations" that defendants' policy of violating
11
    the FLSA extends beyond the branch or office where the plaintiff works.  *See Spencer v. Regional*
12
    *Acceptance Corp.*, 205 U.S. Dist. LEXIS 45221, at *5 (S.D.Fla. Aug. 22, 2005).  In order to
13
    justify notice being sent out nationwide, the plaintiff must show "particularized facts" relating to
14
    "the existence" of a policy violating the FLSA "on a national level."  *Id.*
15
        In ***conclusory*** fashion, the only allegations presented by Plaintiffs in support of their
16
    motion are that:  (1) based on the training they received, all loan officers "throughout the country"
17
    had the "same job functions"; (2) they "understood," based on their "interactions" with their
18
    fellow loan officers in Del Mar that their "job functions" were the same; and (3) during the end of
19
    Plaintiffs' six-month employment, their Del Mar branch manager required them to work three
20
    hours on the weekend making lead calls.  (Pltfs.' Decls. ¶¶ 5, 8.)  None of these justifies the
21
    nationwide notice Plaintiffs seek.
22
        First, Plaintiffs' declarations identically state that Plaintiffs attended an orientation
23
    training at the beginning of their employment with Chase that related to their "job duties and
24
    functions."  (Pltfs.' Decls., ¶ 5.)  Although Plaintiffs attempt to rely on the fact that they attended
25
    orientation training in seeking nationwide notice (Pltfs.' Decls., ¶¶ 4-5), that training was not
26
    even attended by all of the loan officers to whom Plaintiffs now seek to send notice.  In fact, it is
27
    undisputed that *no* Prime Loan Officers ever attended training with Non-Prime Loan Officers.
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                    23                    DEFENDANT'S MEMORANDUM OF
                                                        POINTS AND AUTHORITIES

(*See* Jacobus Stmt. ¶ 3; Haan Stmt. ¶ 13 ("I have never attended training with Subprime Loan Officers."). In fact, some loan officers have never attended live training at Chase at all. *See, e.g.* Haddad Stmt. ¶ 14 ("I never had to attend any kind of on-site training with other Chase loan officers.").

As to the substance of the training, Chase has submitted evidence demonstrating that this three-day orientation program did not involve how a Non-Prime Loan Officer should perform his or her duties. (Jacobus Stmt. ¶ 6.) Instead, the purpose of the orientation was to acquaint the newly hired Non-Prime Loan Officer with Chase's non-prime loan products and Chase's computer systems, including Chase's "The Mortgage Originator" program. (*Id.* ¶ 5.) As with any "new" hire training program, the focus of the class was to help the new employee learn "Chase's unique systems" and not to teach the "employee how to do their job."[2] (*Id.* ¶¶ 4, 6.)

Second, Plaintiffs cannot meet their burden of demonstrating with evidence that they are similarly situated to other loan officers by conclusorily alleging that they had some unspecified "understanding" about other employees' job duties. Plaintiffs' "understanding" is simply unsupported by any facts. (Pltfs.' Decls. ¶ 7-9.) Plaintiffs' inability to specify facts to support their motion is unsurprising given other loan officers' statements that they have no knowledge whatsoever about how other Chase loan officers perform their duties. (Haan Stmt. ¶ 13 ("I do not know how other Prime or SubPrime Loan Officers perform their job functions. I know how I operate."); Griffin Stmt. ¶ 16 ("I do not know how other Prime Loan or Subprime Loan Officers at Chase perform their job functions.").)

Third, Plaintiffs allege that at some point, near the end of their employment with Chase, their particular branch manager "instituted a 'mandatory' weekend lead call generation" and that loan officers in their Del Mar branch office were required "to work approximately 3 hours during the weekend making calls to potential loan applicants." (Pltfs.' Decls. ¶ 9.) On their face, allegations regarding a localized practice of a single branch manager cannot constitute a

---

[2] Many of Chase's Non-Prime Loan Officers come to Chase with many years, sometimes even decades, of experience as loan officers with other financial institutions. (McCraw Stmt. ¶ 5.) Any suggestion that Chase's Non-Prime Loan Officer new employee orientation for three days would somehow dictate how such experienced loan officers, or any other loan officers, would perform their job duties is absurd.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                24                DEFENDANT'S MEMORANDUM OF
                                               POINTS AND AUTHORITIES

1  nationwide policy of Chase.  Moreover, Chase has demonstrated that many loan officers have

2  never been required by their managers to participate in such a "lead call generation" on the

3  weekend, or at all.  (*See, e.g.,* Marder Stmt. ¶ 14 (stating that he has "never been required" by his

4  manager to engage in cold calling; Griffin Stmt. ¶ 12 (stating that "Chase has never required me

5  to participate in office-wide 'call nights' or call time on weekends.")

6      In any event, even if Plaintiffs' allegations regarding their local manager's practice were

7  true, it is not unlawful or a violation of the FLSA to require weekend work.  *See* U.S. Department

8  of Labor Opinion Letter, FLSA 2006-6, Mar. 10, 2006 (providing that employer may require

9  exempt employees to work 45 or 50 hours weekly as the employer may require employees "to

10  work a specified schedule without affecting the employee's exempt status").  Accordingly, to

11  determine whether each Del Mar loan officer was an exempt employee such that Chase could

12  require the alleged three hours of weekend work without paying overtime pay would require

13  precisely the type of individualized inquiry that makes this case unsuitable for collective action

14  certification.  Moreover, even if this Court found that one or more Del Mar loan officers were

15  improperly classified, such that the three hours of alleged weekend work was compensable work

16  time, the Court would have to determine, for each such loan officer, whether they actually worked

17  the weekend hours, as well as the other duties they performed and the time spent performing

18  them, to determine whether the three hours of work resulted in the loan officer working more than

19  forty hours during that workweek.

20      In short, not one of Plaintiffs' allegations constitutes an unlawful policy, much less a

21  nationwide one, to support their request for nationwide notice.

22  **VII.   IF ANY NOTICE WHATSOEVER IS APPROPRIATE, THE NOTICE SHOULD
        BE LIMITED IN SCOPE.**

23

24      Plaintiffs' complete failure to establish that they are sufficiently similar to other loan

25  officers because of the individualized nature of each of their duties, as set forth above in Section

26  V, surely dooms Plaintiffs' motion.  Even if Plaintiffs could establish that they were similarly

27  situated to some subgroup of Chase's loan officers – which they cannot – any notice should be

28  limited solely to cover *only* those employees about whom Plaintiffs can demonstrate that they are

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                                25                     DEFENDANT'S MEMORANDUM OF
                                                                    POINTS AND AUTHORITIES

1   similarly situated. Chase has demonstrated that Plaintiffs are not entitled to engage in far-flung

2   solicitation of its loan officers. If the Court nevertheless determined that some notice was

3   appropriate, any such notice should be limited to the Del Mar office.

4          **1.    Notice Should Not Issue To Chase's Prime Loan Officers.**

5         Plaintiffs have done nothing in their motion to establish that they are similarly situated to

6   Chase's Prime Loan Officers. First, although it is Plaintiffs' burden to show that they are

7   similarly situated to Chase's Prime Loan Officers, they have not provided this Court with any

8   facts whatsoever regarding Prime Loan Officers.[3] This is hardly surprising given that neither of

9   the Plaintiffs worked as a Prime Loan Officer at Chase and no Prime Loan Officers worked at

10  Chase's Del Mar office where Plaintiffs were employed. (Schilling Stmt. ¶¶ 2-3.) Second,

11  Chase's Prime Loan Officers and Non-Prime Loan Officers are, and have been during all times

12  relevant to this litigation, paid according to two different formal compensation plans which reflect

13  substantial differences between the compensation offered to both groups. (Schilling Stmt. ¶ 7.)

14  As a general matter, Non-Prime Loan Officers are paid a higher commission per loan than Prime

15  Loan Officers because of the greater complexity of the financial situations of non-prime

16  customers, and the increased difficulty in closing loans for those customers. (*Id.* ¶ 9.) There are

17  also more specific differences between the compensation for Non-Prime Loan Officers and the

18  that for Prime Loan Officers, including but not limited to the following: (1) Prime Loan Officers

19  are entitled to a split, with Chase, of the profit, or "overage"—where the Prime Loan Officer

20  negotiates a rate higher than the standard rate for a particular loan—whereas Non-Prime Loan

21  Officers are not entitled to seek such overages; (2) Prime Loan Officers can earn additional

22  compensation by "brokering out" a loan where Chase does not have a particular product, but

23  another lender does, whereas Non-Prime Loan Officers do not receive such compensation; and

24  (3) Prime Loan Officers receive adjustments to their commissions for loans where the Prime Loan

25  Officer serves as the "preferred lender" at a development where Chase develops a relationship

---

26  [3]   What little information Plaintiffs have provided relates specifically to Non-Prime Loan Officers. (Trinh Decl. ¶¶

27  11-12 (attaching documents entitled "***Subprime*** Retail Minimum Monthly Production Standards" and "JP Morgan Chase Bank, N.A. ***Non-Prime*** Retail Account Executive (AE) Compensation Plan and Policy Statement Effective

28  Date: August 1, 2006" (emphasis added). Similarly, the orientation training that Plaintiffs reference in their declarations was not attended by any Prime Loan Officers. (Jacobus Stmt. ¶ 3.)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16          26          DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES

1   with a builder, which is an opportunity not available to Non-Prime Loan Officers. (Schilling

2   Stmt. ¶ 10.)  Given these differences, Plaintiffs Trinh and Storey clearly are not similarly situated

3   to the Prime Loan Officers.

4          **2.**     **Notice Should Not Issue Outside California.**

5          Not only is notice to any of Chase's Prime Loan Officers not appropriate, but Plaintiffs

6   have failed to demonstrate that they should be entitled to solicit all Non-Prime Loan Officers

7   nationwide.  The sparse "evidence" Plaintiffs submitted in support of their Motion simply does

8   not warrant such a broad geographic scope.  In fact, Plaintiffs have provided no evidence that

9   they are similarly situated to loan officers outside of California.  Plaintiffs have already made it

10  clear that they do not currently anticipate the participation of putative members of the collective

11  action outside California.  (*See* Pltfs.' Opp'n to Chase's *Ex Parte* Mot. (Docket No. 22) at 3:5-8

12  (stating "although the initial investigation of Plaintiffs' counsel may be incorrect, the opinion was

13  that most of the putative class members who would participate in the present action, are

14  California residents").  This alone is grounds for limiting the scope of any notice.  At the very

15  least, Plaintiffs' statement confirms that they have no knowledge whatsoever regarding any of

16  Chase's Loan Officers outside California and, accordingly, there is no reason to send notice

17  outside of California.[4]

18         **3.**     **Notice Should Not Issue Outside Chase's Del Mar Office**.

19         Similarly, Plaintiffs have no basis for making a request for notice outside their branch

20  office in Del Mar.  Plaintiffs' brief employment was limited to six months in Chase's Del Mar

21  office. (Schilling Stmt. ¶¶ 2-3.)  Plaintiffs' arguments are admittedly limited to their claimed

22  knowledge of the Del Mar office, as they argue that their "understanding" that the "job functions

23  and method of compensation" was the same for all loan officers in Del Mar is based on their

24  _____

25  [4]  At least one court has found that, in a case such as this one where Plaintiffs seek both a nationwide collective
action and a class action under state law, and where the similarly situated requirement is otherwise met, the FLSA

26  notice should be confined to the state whose laws are the subject of the Rule 23 class action. *Chabrier*, 2006 U.S.
Dist. LEXIS 90756, at *9 ("In fact, plaintiff has implicitly conceded in its complaint that the scope of the lawsuit

27  is confined to Ohio; in its Rule 23 class action allegations, plaintiffs seek to represent a class of WFI loan officers
'located in the state of Ohio.'").  Similarly, here, Plaintiffs' Rule 23 claims are limited to the state of California.

28  (Compl. ¶¶ 5-7.)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1   personal interaction with those Del Mar loan officers. (Pltfs.' Decls. ¶ 8.) Additionally,

2   Plaintiffs' complaint that their local Del Mar branch manager allegedly required them to work

3   three hours during the weekend – which is not a violation of the FLSA – is limited to the Del Mar

4   branch. Thus, Plaintiffs do not, and cannot, provide any evidence (competent or otherwise) of the

5   duties performed, the hours worked, or the compensation earned by any other loan officers other

6   than themselves, including other loan officers in their own office, loan officers who have worked

7   elsewhere in California, or loan officers nationwide.

8        Courts have routinely limited the geographic scope of a plaintiff's request for notice

9   where the plaintiff has failed to show that employees in other geographic locations were not

10  similarly situated with the plaintiff. *See Chabrier v. Wilmington Finance, Inc.*, 2006 U.S. Dist.

11  LEXIS 90756, at *9 (E.D.Pa. Dec. 13, 2006) (limiting the geographic scope of the collective

12  action notice to loan officers in Cincinnati where "[e]ach named plaintiff and all 14 opt-in

13  plaintiffs worked exclusively" in Cincinnati); *see also Camper v. Home Quality Mgmt., Inc.*, 200

14  F.R.D. 516, 520-21 (D. Md. 2000) (notice limited to one facility from which evidence of alleged

15  violations was submitted); *Harris v. Healthcare Serv. Group. Inc.*, No. 06-2903, 2007 U.S. Dist.

16  LEXIS 55221, at *5 (E.D.Pa. Jul. 31, 2007) (notice limited to the employees working at

17  defendant's facility where plaintiff worked); *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d

18  433, 436-37 (E.D. Va. 2002) (finding nationwide notice inappropriate and limiting notice to

19  defendant's two locations in Virginia, which were identified in the declarations provided by

20  plaintiffs).

21       Plaintiffs have failed to provide any evidence even potentially relevant to this Motion

22  relating to Chase's practices outside of the Del Mar office. Accordingly, if the Court is inclined

23  to certify any class here – which it should not for all of the reasons discussed above – the class

24  definition should be limited to those loan officers that worked with Plaintiffs in Chase's Del Mar

25  office in San Diego, California.

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16          28          DEFENDANT'S MEMORANDUM OF
                                    POINTS AND AUTHORITIES

**VIII.   IF ANY NOTICE WHATSOEVER IS APPROPRIATE, THE NOTICE SHOULD BE FAIR AND ACCURATE.**

Chase has demonstrated that Plaintiffs have not, and cannot, meet their burden of proving that all of Chase's loan officers nationwide are similarly situated to them.  Accordingly, there is no basis for Plaintiffs' request that this Court facilitate their solicitation efforts.  If this Court were to order that any notice should be sent, however, Chase respectfully requests that the Court deny Plaintiffs' request to utilize the notice attached to their moving papers, and instead follow the typical procedure of ordering the parties to meet and confer to devise a mutually acceptable and accurate notice.  *See, e.g., Jackson v. City of San Antonio*, 220 F.R.D. 55, 63 (W.D.Tex. 2003) (ordering the parties to "meet and confer upon the contents of the notice and consent form and provide a joint proposed notice and consent form to the Court"); *Tucker v. Labor Leasing, Inc.* 872 F. Supp. 941, 950 (M.D. Fla. 1994) (same); *Carter v. Newsday, Inc.*, 76 F.R.D. 9, 16 (E.D.N.Y. 1976) (same).

Such a course of action is particularly warranted in light of the fact that multiple aspects of Plaintiff's proposed notice are patently improper, unfairly prejudicial, and/or entirely inaccurate.  The deficiencies include, but are not limited to the following:

- The proposed class is overly broad temporally;[5]

- The proposed class is overly broad in geographic scope;

---

[5] Plaintiffs overreach in seeking to send notice to loan officers three years before the filing of the Complaint. (Pltfs.' Mot. at 3:26-4:4; Compl. ¶ 5; Pltfs.' [Prop.] Not. 3:2-3.)  As admitted by Plaintiffs in their moving papers (Pl. Mot. at 5:1-6.) the statute of limitations as to any potential opt-in plaintiffs is not tolled with the filing of the Complaint.  *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1105 (11th Cir. 1996); *Updite v. Delta Beverage Group, Inc.*, 2006 U.S. Dist. LEXIS 90719, at *2 (W.D.La. Dec. 15, 2006) (limiting notice to three years prior to the court's certification order).  Therefore, the notice should be dated from the date that any notice would be sent, not the date the Complaint was filed.  Furthermore, the standard statute of limitations under the FLSA is two years. 29 U.S.C. § 255(a).  A three-year statute of limitations is applicable *only* in the case of a willful violation of the FLSA. *Id.*; *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988).  A plaintiff has the burden of providing evidence that the conduct of the employer is willful, and in the absence of evidence there is *no* presumption that the conduct is willful.  *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003).  To establish willfulness, the plaintiff must demonstrate that the employer either knew or showed reckless disregard for whether its conduct violated the FLSA.  *McLaughlin*, 486 U.S. at 133.  The Ninth Circuit defines willfulness to be when the employer "disregarded the very possibility that it was violating the statute." *Alverez*, 339 F.3d at 909.  Here, despite bearing the burden, Plaintiffs have not provided any evidence from which this Court could even preliminarily find the possibility of a willful violation.  Accordingly, the FLSA's two-year statute of limitations should apply.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                                    29                    DEFENDANT'S MEMORANDUM OF
                                                                        POINTS AND AUTHORITIES

- The proposed notice misleadingly states that Chase's Non-Prime Loan Officers were "incorrectly paid on a commission structure" (Pltfs.' [Prop.] Not. at 2:11) without reference to the guaranteed base salary they receive.

- The proposed notice does not contain a description of Chase's position in this litigation, but only Plaintiffs' position;

- The proposed notice fails to advise the recipients of the full scope of their potential responsibilities and/or involvement in the lawsuit, including the possibility that they may be required to travel to California for purposes of being deposed, or participate in a trial in California if they consent to "opt-in;

- The proposed notice sets forth Plaintiffs' counsel as the collector and administrator of the consent forms;

- The Consent Form provides that a putative opt-in may "return" the form *or* "have [the opt-in's] own attorney file it with the Court." (Pltfs.' [Prop.] Consent to Join Action at 2:25-26.) The proposed notice, in contrast, provides that an employee must return the form to Plaintiffs' counsel or the opt-in "will not be allowed to participate in the lawsuit." (Pltfs.' [Prop.] Not. at 3:8-9); and

- The proposed notice erroneously states that "[c]hoosing not to sign and submit a Consent form will not affect your eligibility, if any, to recover overtime compensation under California state law ONLY IF YOU WORKED IN California." (Pltfs.' [Prop.] Not. at 3:22-23.) In fact, in cases where courts have deemed notice to the putative members of the FLSA collective action to be appropriate, California courts have routinely limited the scope of the *state law* claims in those litigations to cover only the individuals who opted in to the FLSA collective action. *See Leuthold v. Destination Am.*, 224 F.R.D. 462, 469-70 (N.D.Cal. 2004) (declining to certify Rule 23 class where opt-in FLSA action is superior method to adjudicate state law claims).

Accordingly, if the Court orders notice of any kind, Chase respectfully requests that the Court direct the parties to submit a mutually agreeable notice within 30 days of the Court's Order. If the parties cannot agree, they should submit their separate proposals for the Court's decision. If the Court does not order the parties to jointly submit a proposed notice, then Chase respectfully requests the opportunity to address in more detail the issues regarding the content, procedures for and timing of any such notice.

## IX.   PLAINTIFFS ARE NOT ENTITLED TO A LIST OF PUTATIVE MEMBERS OF THE CALIFORNIA CLASS ACTION.

Plaintiffs' brief gives the erroneous impression that plaintiffs in FLSA collective actions are generally entitled to the discovery of the names and addresses of their co-workers regardless of whether these individuals are similarly situated. To the contrary, in determining whether a plaintiff is entitled to this information, courts focus directly on whether the plaintiff and the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                                    30                    DEFENDANT'S MEMORANDUM OF
                                                                       POINTS AND AUTHORITIES

1   purported class members are similarly situated.  In *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S.

2   165, 170 (1989), for example, the Court permitted the discovery of the names and addresses of

3   only the employees who were *similarly situated* to the plaintiffs because such employees might

4   have knowledge relevant to the plaintiffs' claims.  *Id.; see also Hammond v. Lowe's Home*

5   *Centers, Inc.*, 216 F.R.D. 666, 673 (D. Kan. 2003) (discussing decisions of various lower courts

6   permitting the discovery of names and addresses of *similarly situated* employees).  Here, unlike

7   in *Hoffman-LaRoche*, Plaintiffs have utterly failed to show that they and other loan officers are

8   similarly situated, and furthermore, Plaintiffs' failure to meet the standard for judicial notice is

9   fatal to their discovery demand.  When the authorization of notice is inappropriate, discovery

10  ancillary to the notice is also inappropriate.  *See Severtson v. Phillips Beverage Co.*, 137 F.R.D.

11  264 (D. Minn. 1991) (holding that because the order authorizing notice was in error, the order

12  compelling discovery of the names and addresses of potential class members must also be

13  reversed).[6]

14          Therefore, there is no legitimate discovery purpose for Plaintiffs' demand.[7]  Reversing an

15  order compelling the discovery of the names and addresses of potential age discrimination class

16  members, the Court in *Severtson* stated: "[P]laintiffs are in effect asking the court to assist in their

17  efforts to locate potential plaintiffs and thereby expand the scope of this litigation."  *Id.* at 266.

18  The Court further observed:  "The courts, as well as practicing attorneys have a responsibility to

19  avoid the 'stirring up' of litigation through unwarranted solicitation."  *Id.* at 267; *Noland v. St.*

20  *Paul Fire & Marine Ins. Co., Inc.*, No. 03-CV-875-T-24, 2003 WL 23731263, at *4 (M.D. Fla.

21  2003) (denying plaintiffs attempt "to use the discovery process to impermissibly fish for opt-in

---

22  [6]  *See also Taylor v. CompUSA, Inc.*, No. 04-CV-0718, 2004 WL 2563203, at *2 (N.D. Ga. July 14, 2004)
23  (concluding that "it is inappropriate to conduct discovery that would enable Plaintiffs' counsel to contact current
    and former CSR's when the standards for court-authorized notice have not been met"); *Dawkins v. GMAC*
24  *Insurance Holdings, Inc.*, No. 03-cv-322, 2004 WL 2035729, at *9 (M.D. Fla. Jan. 29, 2004) (concluding that
    plaintiffs' demand for names and addresses of purported class members was not appropriate where court had not
25  certified a class); *Crawford v. Dothan City Board of Educators*, 214 F.R.D. 694 (M.D. Ala. 2003) (concluding
    that discovery of names and addresses of purported class members was premature where no collective action had
26  been conditionally certified); *Olivo*, 374 F. Supp. 2d at 545 (rejecting demand for discovery of names and
    addresses where plaintiffs failed to meet "similarly situated" standard).
27  [7]  Even if the Court is inclined to authorize notice, the Court should deny Plaintiffs' simultaneous request for a list
    of all potential class members. There are multiple ways to facilitate a collective action notice, such as using a
28  third-party administrator, that would not necessitate the disclosure of past and present employee information to
    counsel for Plaintiffs without those employees' consent.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                                31                          DEFENDANT'S MEMORANDUM OF
                                                                               POINTS AND AUTHORITIES

1    plaintiffs"); *Taylor*, 2004 WL 2563203, at *2 (observing that defendants should be protected from

2    "a frivolous fishing expedition" and denying demand for co-workers' names and addresses in an

3    FLSA action absent showing that the employees were "similarly situated"). Plaintiffs have not

4    demonstrated, nor could they, that loan officers' names and address are discoverable for any

5    reason other than facilitating notice without court approval. Having no basis for their discovery

6    demands, Plaintiffs' request should be denied.

7    **X.    CONCLUSION**

8          For the reasons set forth above, Defendants respectfully request that the Court deny

9    Plaintiffs' Motion. Alternatively, if the Court is inclined to grant certification and authorize

10   notice, Chase requests that: (i) the notice be appropriately limited to the loan officers who

11   worked in the Del Mar office; (ii) that the Court order the parties to meet and confer concerning

12   the notice be utilized; and (iii) Plaintiffs' request to provide discovery of the names of putative

13   members of the class action be denied.

14   Dated: March 4, 2008              MORGAN, LEWIS & BOCKIUS LLP

15                                       BARBARA J. MILLER
                                         DARREN J. CAMPBELL

16

17                             By:  /S/ BARBARA J. MILLER

18                                 Barbara J. Miller
                                   Attorneys for Defendants

19                                 JPMORGAN CHASE & CO., JPMORGAN
                                   CHASE BANK, N.A., and CHASE

20                                 MANHATTAN MORTGAGE COMPANY

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1-IR/441284.16                            32             DEFENDANT'S MEMORANDUM OF
                                               POINTS AND AUTHORITIES